**Peggy J. BOWE, Appellant,**

v.

**Timothy John KEHR, Respondent.**

No. 48131.

Supreme Court of Missouri,

Division No. 2.

April 10, 1961.

Rexford H. Caruthers, Jerome F. Raskas, Paul E. Corning, Jr., and Koenig, Dietz & Siebels, St. Louis, for appellant.

Hartman, Guilfoil & Albrecht, E. C. Albrecht, Jr., James L. Homire, Jr., St. Louis, for respondent.

BARRETT, Commissioner.

In this action to recover $20,000 damages for personal injuries a jury returned a verdict in favor of the defendant and the plaintiff appeals from the ensuing judgment. In the City of Des Peres Manchester Road is a four-lane highway and by ordinance the speed limit is forty miles an hour. The plaintiff, Mrs. Bowe, was a passenger in her husband's automobile. As Mr. Bowe drove his automobile eastwardly through the city, traveling in the outside traffic lane, at a speed of 30 to 35 miles an hour, an automobile driven westwardly by the defendant Kehr, in the inside traffic lane, went out of control on a curve on the wet pavement and, "spinning around," collided with Mr. Bowe's vehicle. Kehr said that he was traveling at a speed of 35 to 40 miles an hour when his automobile went out of control, Mr. Bowe said that his speed was 50 miles an hour "or better." While there were eleven specifications of negligence in Mrs. Bowe's amended petition, her right to recover was submitted upon the single specification that Kehr was operating his automobile at a speed in excess of 40 miles an hour in violation of the city ordinance.

The appellant's first point is that the trial court erred in giving judgment for the defendant "because the verdict of the jury was against the weight of the evidence." The weight of the evidence, like the sufficiency of the evidence to support a verdict in favor of the defendant, is not an open question in this court. "The jury, in the first instance, is the sole judge of the credibility of the witnesses and of the weight and value of their evidence * * * though such evidence be uncontradicted and unimpeached." And, in the second instance, "it was within the exclusive province of the trial court to determine whether or not this verdict was against the weight of the evidence" and the trial court conclusively determined that problem when it overruled the plaintiff's motion for a new trial.

Cluck v. Abe, 328 Mo. 81, 84–85, 40 S.W.2d 558, 559–560.

The appellant's other points are concerned with two related claims: (1) that the trial court unduly restricted her cross-examination of the defendant Kehr as to whether he had made a prior inconsistent statement as to the condition of his tires and (2) that the court erred in denying her the right to call a reporter "to correct an error in the transcription" of Kehr's deposition. On cross-examination Kehr testified, in substance, that his tires were in "fair" condition and the appellant says that because she was restricted in her cross-examination she was not permitted "to lay a foundation for impeachment of the testimony of defendant" as to the condition of his tires. Both points concern the plaintiff's assertion that the reporter who took Kehr's deposition made a mistake in transcribing his testimony and reported that he said his tires were "excellent" when in fact he had testified they were "slick."

To place the problems in context, it should be noted that the plaintiff did not offer any part of Kehr's deposition as an admission or for its substantive evidentiary value as a part of her case in chief. Compare Mertens v. McMahon, 334 Mo. 175, 66 S.W.2d 127, 93 A.L.R. 1285. At the close of her case there had been no evidence whatever to support her amended assignment of negligence that Kehr was operating his automobile with "a set of inadequate tires thereon, which were in dangerous and unsafe condition, with insufficient tread thereon." The subject of tires was not mentioned until Kehr's cross-examination. There is no dispute between the parties as to the relevant rules of law, whether the plaintiff was improperly restricted in her cross-examination is solely a question of fact. These were the questions and answers:

"Q. What was the condition of your tires before the accident? A. Well, they—you could judge for yourself. They had a little tread on them.

"Q. Well, would you describe them as slick? A. No.

"Q. You wouldn't? A. Not slick, no.

"Q. You wouldn't consider them slick? A. No.

\* \* \* \* \* \*

"Q. Mr. Kehr, with reference to your tires, you have told me that you would not describe them as 'slick.' Can you describe them in some way as to the condition of the tread on them. Would you say that the tread was fair, good, or some other descriptive term? Is there any way you can describe that tread on the tires, or do you know? A. Well, I would (say) they were noticeable.

"Q. Noticeable? A. I mean fair, or whatever you want to judge for yourself. I don't know how much was there exactly.

"Q. So you described them then as fair, is that what I understand? A. Well, yes."

There is no claim that the plaintiff was not permitted to ask other or further questions concerning the condition of the tires, the claim of an unduly restricted cross-examination arose in connection with another matter, whether Kehr in a deposition had made a statement to the contrary—that his tires were "slick." When asked, referring to the deposition, whether he had given the answer that his tires were "slick," Kehr answered, "No, I don't believe I did."

At that point in the cross-examination the court pointed out to counsel the fact, "That is not the question and answer that was propounded, (in the deposition) \* \* \*." Counsel then said, "I propose to prove by the court reporter's notes that that was the question and answer which was given at the time." The court replied, "That is not the question and answer that appears in the deposition." A colloquy followed and counsel said, "it is my understanding that

the court reporter's notes show that the answer to that question ("How about your tires, what kind of condition were they in?") is 'slick,' and I propose to bring in the reporter to testify to her notes to show that that is what this man testified to." Counsel said that where the word or answer "excellent" appeared there had been an erasure and the court reporter says that "the notes show 'slick,'" and counsel said, "I can bring the reporter in." The court then called attention to the fact that the reporter's "notarial certificate" stated that she had taken the deposition and in the copy furnished the court the word was transcribed as "excellent." Therefore, the court said, "and until some other proof is indicated to the Court it will remain that way, and you will be prohibited from going into interrogation on that point unless you do it in a proper fashion." The court repeated, "She certifies at the back of it that this is the sworn testimony, and I am not going to take your word for it at this time that it isn't the testimony, and I am not going to permit you to interrogate on it until you show otherwise." Counsel then said, "Well, I would like to make that offer of proof, Your Honor. * * * And bring the reporter in to so testify." The court replied, "You may do whatever you want to on that score, but you will not be permitted to interrogate now. That is outside the scope of this sworn deposition."

Plaintiff's counsel concluded his cross-examination, another witness was called and examined and until the close of that trial day there was no further mention of either tires or the correctness of the deposition. Up to this point, obviously, the plaintiff was not restricted in her cross-examination. Neither did the court deprive her of the right to lay the foundation for impeaching the witness, her difficulty was that she had no contradictory statement with which to confront him and, therefore, could not as a matter of fact lay the foundation for impeachment. 98 C.J.S. Witnesses § 583, p. 559. For the proper procedure and manner of impeaching a witness by use of a deposition see Peppers v. St. Louis-San Francisco Ry. Co., 316 Mo. 1104, 1117, 295 S.W. 757, 762. The answers in this deposition had not been changed or corrected by the witness (Sup.Ct. Rule 57.22, V.A.M.R.), this was an officially authenticated deposition (Sup.Ct. Rules 57.23, 57.24) and officially the answer to the question was that the tires were "excellent" and the statement did not contradict Kehr's testimony. This case was tried on October 26, 27 and 28, 1959, the deposition was taken in April "last year," but plaintiff's counsel says that he obtained a copy of the deposition "only just several days ago," at which time he discovered the mistake. But, regardless of when he discovered the mistake, there was no motion to suppress or correct the deposition. Sup.Ct. Rule 57.48; 26A C.J.S. Depositions § 83, p. 422. The plaintiff had not subpoenaed the court reporter and did not then offer the reporter as a witness and offer to prove by her that she had mistakenly transcribed "excellent" for "slick," even though at that point in the trial "we do not approve of the manner in which he attempted to do it." Scott v. Missouri Pac. R. Co., 333 Mo. 374, 388, 62 S.W.2d 834, 840; Capra v. Phillips Investment Co., Mo., 302 S.W.2d 924. "A mere statement of an offer to prove (by counsel) is not a sufficient offer of proof on which a court is called on to act. The witnesses should be called and questioned, or documentary evidence produced." 88 C.J.S. Trial § 81, p. 186; Northwestern Stove Repair Co. v. Cornwall, 148 Mo.App. 605, 128 S.W. 535. It was not apparent from the officially authenticated deposition that there had been a mistake in transcription and there was no circumstantial evidence from which the court, or a jury if it could possibly be concerned with the matter (McCormick, Evidence, Sec. 53, p. 122), could find that Kehr had made a contradictory statement. Compare Winn v. Gulf, Mobile & O. R. Co., Mo., 284 S.W.2d 455.

There was no further mention of the deposition until the close of that trial day and the close of all the evidence when plain-

tiff's counsel said, "If Your Honor please, I would like leave to offer into evidence as *rebuttal evidence* the testimony of a court reporter concerning a certain passage from the deposition of the defendant previously referred to in this record on which the defendant was questioned. (Italics supplied for emphasis.) I would like to state *that I do not have this reporter here at this moment* because I did not know until the defendant testified whether he would testify according to the notes of the court reporter or not, and that *I have not had an opportunity to call that reporter* and have her come out since the defendant testified. * * * and I would like at this time an opportunity to call the reporter and bring her in for *rebuttal evidence*." A colloquy followed and it was at this point that the court inquired of counsel when he found out "about the fact you felt the deposition was in error." As indicated, counsel said, *"only just several days ago."* The court said, *"And you didn't advise this court and you didn't advise counsel of it until noon today, is that correct?"* Counsel replied, *"That is correct,* Your Honor. I have been attempting to locate the court reporter, who is no longer with the reporting firm who took the deposition, and I didn't locate the court reporter or the notes until just this afternoon, and *I got the telephone call which stated that the notes so indicated that the word was 'slick.'"* On this statement the court said, "I am not going to permit you to bring that witness in now." Then counsel continued: "I was present, and it is my recollection that the testimony was that he said that the tires were slick, and that is what I understand the notes to show, and the reporter by phone tells me—*or one of the reporters in that office, Miss Poole, stated that the words in shorthand are similar, and it could have been an error in transcribing it,* that the notes state that the word is 'slick,' and *I expect that the reporter would so testify* if I could bring her in, and I make that offer of proof into the record both for the purposes of impeachment and also for the purposes of proving the allegations in my petition." Court

recessed for that day and the trial continued the following morning, but counsel did not then offer as a witness the court reporter who in fact took, transcribed and authenticated the deposition.

In all these detailed circumstances, particularly in view of the italicized quotations, the trial court did not manifestly err in denying plaintiff permission to call the reporter as a "rebuttal" witness to correct a claimed error in an officially authenticated deposition. Sup.Ct. Rule 57.48; Northwestern Stove Repair Co. v. Cornwall, supra; Sommer v. St. Louis Public Service Co., Mo.App., 262 S.W.2d 335; Oakey v. Bond, Mo., 286 S.W. 27; 88 C.J.S. Trial § 45, p. 114; § 55, p. 156. Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.