**Wayburn SPEAK, pro ami, Plaintiff-Appellant,**

v.

**Roger L. PRYOR, Defendant-Respondent.**

**Inez SPEAK, Plaintiff-Appellant,**

v.

**Roger L. PRYOR, Defendant-Respondent.**

**Nos. 23306, 23307.**

Kansas City Court of Appeals.
Missouri.

Feb. 6, 1962.

Dubiner & Gregg, Arthur T. Stephenson, Kansas City, for appellant.

Kuraner, Freeman, Kuraner, Oberlander & Lampkin, George T. O'Laughlin, James W. Humphrey, Jr., Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, Wayburn Speak, a minor, by his mother, Inez Speak, sued defendant for

damages growing out of personal injuries received by him when a car he was operating collided with defendant's automobile. Plaintiff, Inez Speak, owner of the automobile he was driving, sued defendant for damages suffered by her and growing out of the collision. The cases were consolidated and tried to a jury. There was a verdict for each of plaintiffs, against defendant, in the sum of $2000. Upon motion, the verdicts were set aside and judgment entered for defendant in each case; and the Court, in the alternative, sustained defendant's motion for a new trial either on the issue of damages only or on all issues.

The collision occurred in the intersection at 17th, an east-west street, and Lawn, a north-south street, in Kansas City. Lawn is 26 feet wide, and carries two-way traffic south of 17th, but north of 17th it is a one-way street, south. The collision occurred June 13, 1958, at about 6:30 p. m. The streets were of asphalt construction, and were dry. Visibility was good. Wayburn Speak, hereafter referred to as plaintiff, was operating his mother's 1950 Mercury automobile, travelling west on 17th. He was alone. Defendant was travelling north on Lawn and intended to turn left at the intersection. His wife was riding to his right. There was a square, two-story building located on the east side of Lawn, 13 feet east of the curb line, and 22 feet south of the curb line on 17th. It obscured the view of both drivers until they reached a point where they could see past the northwest corner of the building.

The case was tried and submitted on the humanitarian theory. Defendant contends that no submissible case was made on that theory because there was no evidence to support it except such as was in conflict with plaintiff's theory of the case, and with his own testimony. He cites Fisher v. Gunn (Mo.Sup.), 270 S.W.2d 869, 875.

He also contends that no case was made because the evidence failed to show that plaintiff came into a position of imminent peril in time for defendant, thereafter, to have stopped his car and avoided the collision.

Plaintiff testified to the effect that he was proceeding west and, when he reached a point 1½ car lengths east of the east curb line of Lawn, he saw defendant's automobile proceeding north on Lawn, about 2 car lengths south of 17th; that plaintiff's speed was 15 miles per hour; that the speed of defendant's car was faster than plaintiff's, from 20 to 25 miles per hour; that when plaintiff's car was one length, 15 or 16 feet from the curb, proceeding at 15 miles per hour, defendant's car was then 1¼ car lengths from the curb line of 17th; that, at that point, plaintiff realized there was danger of a collision; that he applied his brakes but travelled 7 or 8 feet before they took hold, about 7 feet from the curb line; that he then travelled ten feet to the point of impact; that the left side of his car was 1 foot north of the center line of 17th; that he did not skid but that he heard defendant's car skid; that plaintiff entered the intersection first; that, at the point of impact, he was travelling not more than 5 miles per hour; that he tried to turn his car but could not do so because it was in second gear; that plaintiff's car never changed course; that plaintiff's car was damaged at the left front corner and left rear fender; that defendant's car hit him at the right front and right back.

Pictures in evidence, introduced by plaintiff, show that plaintiff's car was badly smashed across the entire left half of the right front, with some damage toward the right rear. The pictures show that defendant's car suffered damages on the right side, immediately back of the lamp, but the lamp was not smashed. The testimony and the pictures disclose that the vehicles came to rest, near together and side by side, at the northwest corner of the intersection, virtually against the curb, and headed nearly west. A police officer testified for plaintiff to the effect that a motor vehicle, travelling at a speed of 15 miles per hour with foot off of the brake, could have been stop-

ped at 28 feet; with foot on the brake it could have been stopped at 22½ feet; that, at 12½ miles per hour, foot off of the brake, it could stop at 20 feet; at 12½ miles, foot on the brake, 15 feet; at 10 miles, foot off brake, 16 feet and with foot on the brake, 12 feet. He stated that if a car left skid marks, overall, of 20 feet before impact, it would indicate its minimum speed to have been 14 miles per hour; and that if 70 feet of skid mark was laid down, a speed of 34 miles per hour would be indicated.

A police officer of the accident investigation unit visited the scene 13 minutes after the collision occurred. He testified for defendant to the effect that he took pictures and measurements; that the pictures in evidence were the same or similar to those taken by him; that plaintiff told him, at the scene, that he was travelling west at 25 to 30 miles per hour when he saw defendant's car 15 feet away and could not avoid the accident. He further testified to the effect that he observed skid marks, 20 feet in length, leading to defendant's car, and marks leading from the point of impact 56 feet east, (past the intersection of 17th and Lawn) and 24 feet northwest from the point of impact; that they led to where plaintiff's car then sat; that those marks would indicate plaintiff's speed to have been at least 34 miles per hour; that, to a trained eye, they were visible on the pictures; that the point of impact was 11 feet west of the east curb line of Lawn, which is 26 feet wide.

Witnesses for plaintiff testified that there were no skid marks left by his car. Defendant, called by plaintiff, testified to the effect that, as he approached 17th from the south on Lawn, at a point two car lengths south of the intersection he was travelling at a speed of from 10 to 15 miles per hour; that he had his foot on the brake because the location of the building at the southeast corner made it a dangerous intersection; that he was thoroughly familiar with the streets and intersection and had his signal light on to turn left; that when 15 feet south of the curb line he saw plaintiff 3 or 4 car lengths east of the intersection; that, when the front of his car was from 10 to 20 feet south of the curb line he fully applied the brakes; that plaintiff was then from 54 to 72 feet east of the curb line; that he sounded his horn and that his brake was on full force when he reached the curb line.

According to plaintiff's evidence he was about 22½ feet east of the curb line when he first saw defendant's car, then 30 feet south of 17th street. Plaintiff said his brakes took hold when he was seven or eight feet east of Lawn; that he travelled about 10 feet further before the collision occurred, at which time his car was 1 foot north of the center of 17th. Other testimony placed the point of impact at 11 feet west of the east curb line of Lawn.

If, as defendant said, he had his foot on the brake before he sighted plaintiff, and if, as he said, he applied the brakes when from 10 to 20 feet south of 17th he could have stopped his car, (at 15 miles per hour) within 22½ feet. But he stated his speed to have been from 10 to 15 miles per hour. At 12½ miles per hour, with foot on the brake, the car could have been stopped within 20 feet, which would have been before reaching the point where the cars collided. If he were travelling 12 miles per hour he could have stopped within 16 feet and, at 10 miles, within 12 feet.

■ Plaintiff, after verdict is, ordinarily, entitled to the benefit of all evidence favorable to his theory and to all favorable inferences to be drawn therefrom. Price v. Nicholson, Mo., 340 S.W.2d 1, 5. Under all of the evidence here, including defendant's testimony, the jury could have found that defendant could have stopped his car, with safety to himself, his car and others, after he saw and realized that a collision would inevitably follow, and have avoided the collision.

But defendant says that his testimony is not available to plaintiff in order to piece out and make a humanitarian case because

such testimony is directly contrary to that of plaintiff himself and is contradictory of his theory of recovery. He calls attention to the fact that plaintiff estimated his speed, when he first saw defendant, at 15 miles per hour, and defendant's speed as higher than that, perhaps 20 to 25 miles per hour. Even so, these speeds were not based on any mechanical device but were the estimates of a young man who had only five months of driving experience. He offered defendant's testimony, as his own witness, and such testimony became a part of the body of evidence upon which he relied to establish his theory of recovery. Under such circumstance, he was entitled to the benefit of evidence most favorable to him, De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633; and he was entitled to the benefit of defendant's testimony as to his own speed, even though defendant stated that his speed was materially lower than that which plaintiff estimated it to be, Tunget v. Cook (Mo. App.), 94 S.W.2d 921, 925. Plaintiff's estimate of defendant's speed, under the circumstances existing here, amounted to little more than a guess and does not bind him so as to preclude his benefit from defendant's testimony. Haddow v. St. Louis Public Service Company (Mo.App.), 38 S.W.2d 284, 286; Davidson v. King (Mo.App.), 309 S.W.2d 132, 135–136; Morgan v. Thompson (Mo.), 325 S.W.2d 794, 797.

■ Defendant urges that the Court should have ordered a new trial on the issue of liability because plaintiff's verdict directing instructions, No. 6 and No. 1, did not "hypothesize either by recital or by reference to other instructions, facts essential in law to support the verdict, when the evidence presented two divergent sets of essential facts, and two irreconcilable theories of the case".

The instructions are similar. The material portion of No. 6 is set out below:

"The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in evidence plaintiff became and was in a position of imminent peril and danger from collision between defendant's automobile and the automobile plaintiff was driving, and that defendant saw, or by exercising the highest degree of care could have seen, plaintiff in the aforesaid position of imminent peril and danger, if you so find, in time thereafter, by exercising the highest degree of care and with the means at hand, and with safety to defendant, the passenger in defendant's automobile, and any others at said intersection, to have stopped defendant's automobile, if you so find, and by so doing could have prevented such collision described in evidence. * * *"

Plaintiff's instruction No. 2 was in part as follows:

"The Court instructs the jury that by the term 'imminent peril' is meant certain immediate and impending peril and not mere possibility of collision or probability of danger, and that the term 'position of imminent peril' referred to in instruction No. 1 means that distance from the point of collision short of which the automobile driven by plaintiff could not have been stopped by his efforts, in the exercise of the highest degree of care and with safety to himself, and the automobile."

Defendant's instruction No. 15 told the jury that unless it found from the evidence that defendant could have prevented the collision by *stopping* his automobile, it must find for defendant.

Defendant relies on the following cases as supporting his position: Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541; Hooper v. Conrad, 364 Mo. 176, 260 S.W. 2d 496; Thaller v. Skinner & Kennedy Company (Mo.App.), 339 S.W.2d 487. These are all primary negligence cases.

Instruction No. 1 requires the jury to find that, "*at the time and place mentioned in*

*evidence*", plaintiff became and was in a position of imminent peril and danger from collision of the two automobiles.

It is, essentially, similar to an instruction approved by the Supreme Court in Price v. Nicholson, 340 S.W.2d 1, 10. It was further clarified by instructions 2 and 15. There was no misdirection and the instruction is not prejudicially erroneous.

The judgment is reversed and the cause is remanded with directions to reinstate the verdicts and enter judgment thereon.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.