Earl E. MANLEY and Sylvia Manley,
Plaintiffs-Appellants,

v.

Herman Lee HORTON, Defendant-Appellant,

Claude Headley and Allen Pruwitt, Jr.,
Defendants-Respondents.

No. 51959.

Supreme Court of Missouri,
Division No. 2.

April 10, 1967.

Motion for Rehearing or to Transfer to Court
En Banc Denied May 8, 1967.

Gerritzen & Gerritzen, by Ray A. Gerritzen, St. Louis, for plaintiffs-appellants.

John J. Cole and Armstrong, Teasdale, Kramer & Vaughan, St. Louis, for respondent, Claude Headley.

EAGER, Presiding Judge.

This action arose from a two-car collision near the junction of Highway 66 (now Interstate 44) and Highway 109 in St. Louis County on August 3, 1963. In Count 1 Earl E. Manley sought recovery for his injuries; in Count 2 his wife, Sylvia Manley, sued for loss of consortium, assistance and society. Manley was a passenger in a 1961 Falcon station wagon driven by defendant Headley, both being on the way to work at the Alpha Portland Cement plant. Defendants Horton and Pruwitt were the occupants of the other car, a 1961 Corvair, with Horton driving.

A motion of Pruwitt for a directed verdict was sustained; the transcript shows no actual verdict and no judgment in his favor. On Count 1 the jury returned a verdict for defendant Headley but against defendant Horton in the sum of $50,000; on Count 2 it found in favor of both defendants and against plaintiff Sylvia. The amount of the verdict and judgment against Horton was reduced by remittitur to $25,000; judgments were entered accordingly, except as noted. All after-trial motions were overruled. Both plaintiffs have appealed. Defendant Horton appealed but did not perfect his appeal, and it will be dismissed for his failure to prosecute. Only the plaintiffs and defendant Headley have filed briefs. When we refer to "plaintiff" in the singular, we shall refer to Earl Manley. It will not be necessary to digest the pleadings, for no point is made concerning them.

Headley was driving south on Highway 109 and crossed dual lane Highway 66 on an overpass or viaduct; thence, he made a sharp turn to his left and proceeded down a ramp for approximately 465 feet to reach the eastbound lanes of 66. At the end of the ramp a "merging" lane began, and there was a "yield" sign; the length of the merging lane was 545 feet of full width, plus an added distance of 100 feet or more where it tapered to a point. The highway inclined slightly upward from the end of the ramp. The distance from the lower end of the ramp back to the overpass or viaduct was said to be about 500 feet. There was some difference of opinion concerning the view from the ramp back to the viaduct; plaintiff testified that one could see the road back to the viaduct when a "short ways" down the ramp; Headley testified that there was not a good view back under the viaduct until one gets "pretty well down" the ramp. Headley further testified: that he had driven this route many times; that as he neared the end of the ramp (traveling at about 35 miles an hour) he looked back toward the viaduct through his open window, could see for 100 feet or more under it, and saw no car; that he proceeded into the merging lane, but looked back again about where the merging lane "starts to merge with the south lane," and saw the Horton car; that it was then in the *north* lane (the passing lane) of the two eastbound lanes; that it had passed under the viaduct, and (at one point in cross-examination) he testified that it was perhaps 600 to 700 feet west of him and that he did not then form any estimate of its speed; that he drove on, gradually "easing" into the south lane, traveling at around 45 miles an hour and had proceeded, with at least 14 or 15 feet of open roadway on his left, for four to six car lengths entirely in the eastbound south lane when his car was struck from the rear; that the right front of Horton's car struck the left rear of Headley's; he heard no horn and no sound of brakes; that the Horton car then scraped the left side of Headley's up to the left front fender, pushing it somewhat to the right, and passed on at an estimated 60–70 miles an hour; the Horton car proceeded on up the road for about a quarter of a mile and stopped on the shoulder; Headley pulled up behind it and a discussion ensued. He further testified: that he asked Horton "How come you hit me right here in daylight, in open traffic?" and that Horton shook his head a little, "like he'd been a little sleepy or dazed" and said that the only explanation he had was that "he must have dozed at the wheel." The parties exchanged the usual information, and all proceeded on. Headley's car was equipped with an inside and an outside rear vision mirror; he admitted that he sounded no horn and gave no turn signal. Headley insisted firmly that his car never touched any part of the north or passing lane, and plaintiff fully corroborated him in this. Plaintiff testified that Headley's car had not been completely in the eastbound highway lane more than two or three car lengths before the impact; that the collision occurred when Headley had traveled about one-half the distance of the merging lane; he estimated this point to be 750–800 feet from the viaduct; he never saw the

other car until it struck them. No other car was nearby at the time of the collision which occurred about 6:10 a. m.

■ Defendants Horton and Pruwitt testified by deposition. Both were in the service and were traveling to their homes in Detroit on leave. They left Lawton, Oklahoma (Ft. Sill) at about 7:30 on the preceding evening and had driven straight through except for two or three stops for gasoline, coffee and perhaps a sandwich. The car belonged to Horton; he testified that it was in good mechanical condition. Both testified that they had agreed in advance to split equally the expenses of the trip, to share the driving, to go straight through to Detroit, that they had agreed upon the route to be followed, and that Pruwitt was to be delivered to his residence in Detroit. Pruwitt had driven from about midnight until just after daylight, perhaps 5:00 o'clock. Horton then took over the driving, and Pruwitt went to sleep. He, Pruwitt, knew nothing about the facts of the collision and was awakened by it. Horton testified: that he had slept some on the preceding afternoon, and that he slept also in the back seat while Pruwitt drove; that prior to the collision he was traveling in the right (south) lane, although he first stated the contrary; that he first saw Headley's car when it was about 5–6 car lengths ahead of him, and that it kept weaving back and forth across the center line; that he sounded his horn and started to pass, but that it moved over at that time and they collided; that the impact occurred when the Headley car was partially in the left or passing lane; that he was then traveling at about 55 miles an hour, Headley at about 50; that the only damage to his car was to the front fender and one right headlight. Horton disclosed an unusual vagueness with regard to distances and periods of time; he had no idea how long a car was; he denied stating that he must have been "dozing." Defendant Headley, having the benefit of a verdict, is entitled to the most favorable view of the evidence and to all reasonable inferences

therefrom. Daly v. Schaefer, Mo.App., 331 S.W.2d 150; White v. Rohrer, Mo., 267 S.W.2d 31.

■ Plaintiff Earl Manley assigns error in the failure of the trial court to direct a verdict for him against defendant Headley on liability; his counsel say that on Headley's own testimony he was guilty of negligence as a matter of law in that he was on the highway two seconds or less before the collision, traveling 40–45 miles an hour, and that he must have entered the highway when Horton was not more than 210 feet from the point of impact, assuming the latter's speed to be 70 miles an hour; that he failed to keep a vigilant lookout in that he did not see the Horton car at 50, 100 or 300 feet, sounded no horn, gave no signal and did not swerve to his right. In all this plaintiff overlooks the fact that Headley was not entering an ordinary two-way road with a car approaching from behind and traveling in the same direction; he was entering the outside lane of a divided highway, and he testified specifically that when he saw the other car approaching, it was in the passing (or inside) lane. Regardless of the claimed admissions in estimates of time, distances and speeds, we are wholly unwilling to hold, as a matter of law, that one who enters the outer lane of a dual highway from the merging lane under such circumstances is guilty of negligence. The cases cited by plaintiff are distinguishable. Practically all of them involve the negligence of a party in entering an ordinary intersection on a street or highway without keeping a vigilant lookout or without yielding the right of way when the circumstances so required. They recognize that under such situations a mere perfunctory or fleeting glance is not enough, and properly so. The only divided highway case, Hinds v. Kircher, Mo., 379 S.W.2d 607, involved a construction of § 304.012, RSMo 1959, V.A. M.S., regulating speeds on limited access highways when other traffic is entering or leaving the highway. That case is not applicable here.

Aside from that distinction, however, we note the following. Headley did at one time estimate that the impact occurred within two seconds after he got into the south lane of the highway; he also stated at one place that when he first saw the other car it was probably 600–700 feet away. Plaintiff argues that this would mean that Horton must have traveled 600 or more feet in two seconds, which would be impossible. The statements of Headley so relied upon by plaintiff were necessarily estimates. He testified to other and different facts by way of explanation, such as locations and distances traveled, which modified the statements which plaintiff thus singles out. Moreover, a photograph upon which Headley marked the point of impact would seem to indicate that he had traveled much farther than plaintiff claims and considerably longer than two seconds after he first saw the Horton car. Except for two measurements made by plaintiff, all distances and times stated were mere estimates. Those made by Headley were not of such character as to justify a declaration that he was guilty of negligence as a matter of law. Davis v. Kansas City Public Service Co., Mo., Banc, 233 S.W.2d 669, 674; Carlson v. St. Louis Public Service Co., Mo., 358 S.W.2d 795, 800; Smith v. Siercks, Mo., 277 S.W.2d 521; Tunget v. Cook, Mo.App., 94 S.W.2d 921; Dennis v. Wood, 357 Mo. 886, 211 S.W.2d 470, 474; Speak v. Pryor, Mo.App., 355 S.W.2d 431; State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S.W. 2d 406.

This conclusion becomes inescapable and plaintiffs' argument concerning time and distance really becomes immaterial when we note again that Headley was, according to his testimony, entering an *open* lane of a dual highway with no car traveling in that lane, behind him or in front of him, and that it was broad daylight, on a clear, dry day. The somewhat self-contradictory testimony of Horton as to what lane he was in could not be used as the basis for a directed verdict against Headley. The jury was at liberty to find that a person in the exercise of the highest degree of care would not have felt it necessary, after first seeing the car in the *other* lane, to keep a continuous lookout or watch behind him. Many supposedly reasonable persons do the same thing. The issues of Headley's lookout, speed, and failure to yield, swerve or warn were properly submitted to the jury and there is no complaint here of the instruction. The verdict of the jury foreclosed both Earl Manley and his wife as against Headley. It is indeed seldom that a court will direct a verdict in favor of a party who has the burden of proof. And the weight of the evidence, a question which plaintiff also raises here, is conclusively determined when the trial court overrules the motion for a new trial, if there is any substantial evidence to support the verdict. Bowe v. Kehr, Mo., 345 S.W.2d 224; Goldman v. Ridenour, Mo., 383 S.W.2d 539.

In considering this point we have chosen to omit any discussion of certain procedural contentions of Headley's counsel to the effect that this claim of the plaintiffs was not properly raised by motion for a directed verdict and by a sufficient after-trial motion to set aside the judgment and to enter judgment for plaintiff under Rules 72.01 and 72.02, V.A.M.R. We have preferred to rule on the merits, but we do note that a written motion for a directed verdict is to be preferred rather than an oral motion, as is also a statement of the grounds for the motion, at least generally.

The next point made concerns a part of the final argument of Headley's counsel. That argument, in its context, was as follows: " * * * It is not whether it could have happened in a certain way, it is whether the plaintiff, who is charging all of these things has caused you to believe, has produced the evidence to cause you to believe they are true. And, if you don't know, and you don't from this evidence, you can't make up your minds whether Headley for instance is, or is not, in any way responsible, then the law says your verdict must be for Mr. Headley and

not for the plaintiff; not for the plaintiff against Mr. Headley unless he has caused you to believe that, and has proved that to your satisfaction * * *." Counsel for plaintiff immediately interrupted with an objection at this point whereupon the Court said: "Well, the jury will be guided by the evidence and instructions, which instructions they will take to the jury room with them and they will apply the evidence to the instructions, and directions are included in the instructions." Counsel for plaintiff then, out of the hearing of the jury, objected further to the use of the word "satisfaction," and asked both that the jury be instructed to disregard it and for a mistrial. Counsel for Headley at that time offered to "straighten it out," the Court "reserved" any further ruling, and counsel stated to the jury that if there was "any question" about the matter he would read Instruction No. 2 (burden of proof) and he proceeded to do so. He then continued: "If the evidence in the case does not cause you to believe, that is the positive duty upon the plaintiff to cause you to believe those propositions. As I told you, anyone with $15.00 can file a lawsuit against anyone else and charge anything, so that's why the burden of proof—on the plaintiff charging fault on another party, is so important under our system."

■ Counsel for plaintiff cite Bell v. Pedigo, Mo., 364 S.W.2d 613, where this Court held that the use of the terms "to the satisfaction of" or "to the reasonable satisfaction of" the jury in a burden of proof instruction would be deemed reversibly erroneous after the printing of that opinion. That has since been the law and, moreover, the form of the burden of proof instruction is now fixed by MAI 3.01, which was given in this case. The word "satisfaction" should not have been used in argument here, but the caution given by the Court, by implication at least, told the jury that the instructions were controlling, Kiger v. Terminal Railroad Ass'n of St. Louis, Mo., 311 S.W.2d 5, 12, and counsel,

by way of apology, read the entire instruction to the jury. Under the circumstances we hold that the jury could not have been misled, and that the Court did not abuse its discretion in failing to give further relief. Collins v. Cowger, Mo., 283 S.W.2d 554, Kiger, supra. The Court could and should have eliminated all question by a simple statement to the jury that "satisfaction" was not the proper test of the burden of proof.

■ In the next assignment counsel claim that the Court erred in "permitting" Headley's counsel to engage in a colloquy with plaintiffs' counsel during the latter's final argument. The manner concerned a strain or injury sustained by plaintiff while at work seven months after the accident, and statements of plaintiffs' counsel that plaintiff had not made any Workmen's Compensation claim therefor. The remarks of Headley's counsel (now complained of) were, in substance, that he did not know what plaintiff had done and had made no effort to check into it. The very simple answer to the present contention is that plaintiff's counsel made no objection to the remarks at the time and requested no relief from the Court. See: Blanford v. St. Louis Public Service Co., Mo., 266 S.W. 2d 718; Lynn v. Kern, Mo., 323 S.W.2d 726. The only request for any relief was made by Headley's counsel because of *plaintiffs'* improper argument, and the Court very pointedly told the jury that the whole discussion of any such claim was irrelevant and that there should be no more such interchanges. Aside from the failure of plaintiffs' counsel to object or ask any relief, the record discloses that plaintiffs' counsel was at least equally at fault in introducing the subject both in evidence and in argument, and in engaging in the colloquy; the occasion was certainly not one of such magnitude that the Court was required to do more of its own volition. The point is of no merit.

■ The next point is that defendant Pruwitt's motion for a directed verdict

was improperly sustained. We note again that the Court failed to require the rendition of a verdict and to enter any judgment in his favor. There is no respondent's brief here for Pruwitt, but we must consider and rule the question on plaintiffs' appeal. Some independent research has been necessary. Plaintiffs' counsel insist that on the admissions of Horton and Pruwitt we should direct that a judgment of $25,000 be entered against Pruwitt. The admissions consisted of their testimony by depositions that they had arranged for the joint trip to Detroit in Horton's car, had agreed on the route and the sharing of expenses equally, that Pruwitt was to be delivered to his home, that they would drive straight through, and that they would divide the driving. These things, say counsel, created a joint venture as a matter of law. We do not find this to be true. The stated elements are matters to be considered in such a determination, but they are not conclusive, jointly or severally. Prosser on Torts 2nd Ed., § 65, pp. 363–366; Restatement of Torts 2nd, § 491, pp. 548–551; Matta v. Welcher, Mo. App., 387 S.W.2d 265. According to the Restatement, supra, the requirements are: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. Whether these elements exist is frequently a question for the jury, under proper direction from the court." In Prosser, supra, at pp. 365, 366, the author says: "The prevailing view is that a joint enterprise requires something, beyond the mere association of the parties for a common end, to show a mutual 'right of control' over the operation of the vehicle—or in other words, an equal right in the passenger to be heard as to the manner in which it is driven. It is not the fact that he does or does not give directions which is important in itself, but rather the understanding between the parties that he has the right to have his wishes respected, to

the same extent as the driver. * * * The essential question is whether the parties can be found by implication to have agreed to an equal voice in the management of the vehicle, and this is frequently a question of fact for the jury." The admissions of these parties did not, as a matter of law, show a joint right of control. While this doctrine is frequently used to show contributory negligence on the part of the non-operator, it is seldom used to create liability on his part to a third person. Prosser, supra. However, we see no legal reason why it should not operate both ways.

Most of the Missouri cases involving this theory of imputed negligence have been based primarily upon the fact that the passenger was the owner of the car and thus automatically entitled to a right of control. Smith v. Wells, 326 Mo. 525, 31 S.W.2d 1014; James v. Berry, Mo.App., 301 S.W. 2d 530; Kieffer v. Bragdon, Mo.App., 278 S.W.2d 10; Hill v. St. Louis Public Service Co., Mo., 64 S.W.2d 633; Tener v. Hill, Mo.App., 394 S.W.2d 425; Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366. And see, by way of comparison, Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, where the wife, who did not participate in the ownership of the car, was held not liable because the circumstances did not indicate a joint control. In Counts v. Thomas, Mo.App., 63 S.W.2d 416, the son of the owner allowed another boy to drive for their common purpose; the son was held liable as one having a joint right of control.

■ The very recent case of Matta v. Welcher, Mo.App., 387 S.W.2d 265, involved facts rather startlingly similar to ours. The Court held, after a very informative discussion of the subject, that the evidence was sufficient to permit an inference of a joint enterprise, but that this was a jury issue. Some doubt is raised in our case by the fact that Pruwitt was asleep at the time of the accident, but we conclude that this did not necessarily eliminate the issue of his *right of control*

on the trip. Under a proper instruction at another trial the jury should consider the liability of Pruwitt. The damages have already been fixed by the previous jury verdict and the remittitur.

 The last point made is that the trial court erred in not sustaining the motion of Sylvia Manley because her evidence of loss of "consortium, assistance, society and care" was undisputed and the jury found that her husband had suffered a substantial injury. She testified in considerable detail to her husband's pain, treatments, and disabilities. This court has held twice, with three dissents, that a wife has a right of action for loss of consortium arising out of injuries to her husband. Novak v. Kansas City Transit, Inc., Mo., Banc, 365 S.W.2d 539; Shepherd v. Consumers Co-Op. Ass'n, Mo., Banc, 384 S.W.2d 635. Those cases have not been overruled. We amended our Rule 66.01 so as to require that such an action be joined with the action of the other spouse. As to defendant Headley, the wife is foreclosed by the jury's verdict. As to defendant Horton, the verdict against her is so inconsistent with the verdict in favor of her husband and against Horton, that it should be set aside and a new trial granted.

The appeal of defendant Horton is dismissed for his failure to perfect and prosecute it under our rules. The judgments in favor of defendant Headley and against both plaintiffs are affirmed. The trial court is directed to set aside its order sustaining the motion of defendant Pruwitt for a directed verdict (there being no judgment of record thereon) and to grant plaintiff Earl Manley a new trial against said defendant on the question of liability only, holding Earl Manley's judgment against defendant Horton in abeyance pending the result thereof. The judgment in favor of defendant Horton and against Sylvia Manley is reversed, and the trial court is directed to grant her a new trial against that defendant on the issue of damages only; it is further directed to grant Sylvia Manley

a new trial on both liability and damages as to defendant Pruwitt.

It is so ordered.

FINCH and DONNELLY, JJ., and MOORE, Special Judge, concur.