Arthur ANDERSON, Plaintiff-Respondent,

v.

INDEPENDENT MUTUAL FIRE INSUR-
ANCE COMPANY of Missouri, a cor-
poration, Defendant-Appellant.

No. 33465.

St. Louis Court of Appeals,
Missouri.

March 24, 1970.

Muehlenkamp & Murray, Thadeus F. Niemira, Crestwood, for defendant-appellant.

Hayes & Hayes, John F. White, St. Louis, for plaintiff-respondent.

LYON ANDERSON, Special Commissioner.

In this action plaintiff seeks recovery on a policy of fire insurance for loss and damage to personal property alleged to have been sustained by him as a result of a fire which occurred at his home on February 20, 1967. There was a verdict and judgment for plaintiff in the sum of $2,500.00. From said judgment defendant has perfected this appeal.

The petition was in conventional form, containing a prayer for $2,500.00 alleged to be the amount of plaintiff's loss, together with a ten percent penalty and an attorney's fee for vexatious refusal to pay said loss.

Defendant by its answer set up as a defense: (1) that on February 20, 1967 the policy had lapsed for non-payment of premiums and was for that reason not in force at the time of the alleged loss, and (2) that plaintiff failed to furnish defendant proof of loss as required by the terms of said policy. The plaintiff's evidence at the trial was directed to the issues raised by the pleadings. Defendant's evidence tended to show cancellation by mutual consent, which theory was submitted by defendant's principal instruction. However, on appeal defendant seeks a reversal of the judgment on a ground not pleaded or presented to the trial court. We will discuss this assignment after disposing of the issues raised with reference to matters actually tried.

Plaintiff Arthur Anderson was the owner of an eight room house located on Kensington Avenue in the City of St. Louis where he lived with his wife and children. On March 16, 1964 defendant Independent Mutual Fire Insurance Company issued to plaintiff a policy of insurance whereby it agreed to indemnify plaintiff for any loss or damage to his household property he might suffer by reason of fire. The premium specified was one dollar per week, payable on Monday of each week. It was also provided that if the policy was two Mondays or more in arrears the company would not be liable for any loss, and that the failure of the collector to call for the premium would not be an excuse for non-payment, but that insured in such event would be required to pay the premium at the home office, or at one of the district offices of the company.

It was the practice of defendant's agent, Mr. Walker, to make collections of weekly premiums on Saturdays by calling at plaintiff's house. Mrs. Anderson usually gave the collector the money whenever he called. However, Mrs. Anderson testified that Mr. Walker very seldom came to collect every week, but would make it "Sometimes three weeks or four weeks * * *." Mr. Walker testified that the Andersons were always in arrears, and that he stopped by their place every Saturday.

On Saturday morning, February 18, 1967, Mr. Walker called at the Anderson home to collect the premiums due on the policy. The policy was then six weeks in arrears, and the amount then due was six dollars. At the time Mr. Walker arrived Mrs. Anderson was talking on the telephone. She

told her daughter to give Mr. Walker the money to cover the past due premiums. The daughter by mistake gave Mr. Walker twelve dollars (six dollars of this was to be paid to the collector of the Reliable Life Insurance Company as a premium on a policy of that company). Mr. Walker gave a receipt for twelve dollars on a form of the Commonwealth Life and Accident Insurance Company. Mr. Walker knew that there was only six dollars due on defendant's policy at that time.

Shortly after Mr. Walker received the twelve dollars Mrs. Anderson called defendant's office and talked to Mr. Taubman, district manager for said company. Mrs. Anderson testified that in this conversation she stated her daughter had paid defendant's collector six dollars too much and that she wanted the company to return the six dollars; that the man she was talking to replied: " 'It's been paid on the insurance, fire insurance' " and that in reply to her statement that there was due only six dollars he said: "Well, Walker isn't in * * * There is nothing we can do about it."

Mr. Taubman's testimony concerning the telephone conversation was as follows: "A She said that my agent, Mr. Walker, had taken twelve dollars that wasn't his, it wasn't his money, it was Reliable Insurance Company's money, and that she was on the phone at the time and the little girl came to the door and he took her money and gave her a receipt of it, and she wanted that money back. Q How much money did she ask you for? A She asked me for twelve dollars. Q And what did you tell her? A I told her that there was nobody in the office, the agent don't come in the office on Saturdays, and that there was no way I could check, but if it was her money I would have to see the agent when he came in and ask him, or if he calls in at any time, which sometimes they do, 'I will tell him to go back and refund your twelve dollars.' "

Mr. Taubman further testified that the following Monday morning between eight-fifteen and eight-thirty Mrs. Anderson again called on the telephone stating that the agent had no right to pick up that money and that she wanted it returned. He testified he told her he would check the matter with the agent which he did and was informed by the agent that he did collect twelve dollars from her, and on Monday morning, February 20, 1967, he signed a check for twelve dollars which was prepared by his secretary. This check was dated February 18, 1967. He gave the check to Mr. Walker to deliver to Mrs. Anderson. Mr. Walker returned the check stating that Mrs. Anderson would not accept it, and that plaintiff had suffered a fire loss. Mr. Taubman further testified that in the Monday morning telephone conversation with Mrs. Anderson he told her that if he returned the twelve dollars there would be no insurance, and she replied: " 'I don't care. I want my twelve dollars.' " Mrs. Anderson testified she did not recall the Monday morning telephone conversation, but if she did have such conversation she never asked for a return of twelve dollars, but for only the six dollar overpayment. She stated she did not tell Mr. Taubman the Saturday before that they did not want the fire insurance.

Mr. Walker testified that on Monday morning, February 20, 1967, Mr. Taubman called him into the office and told him Mrs. Anderson was demanding her money, and asked him if he had collected twelve dollars from her; that he told Mr. Taubman that he had; that Mr. Taubman said, " 'Well, she doesn't want insurance any more and I'm going to draw a check sending the twelve dollars back, and you will have to lapse off the books. She doesn't want the insurance any more.' " Mr. Walker further stated: "Well, I had other clerical work to do for myself and I left the office and made one or two or three calls (on) some other streets, and then roughly about eleven-thirty, could be twelve o'clock, I went out to the fifty-one hundred block. She lived in the fifty-one hundred fifty-three, I think, Kensington, and when I made the turn to come into the block the

**612**

police officer had it blocked off * * * My purpose was to take a check out there to Mrs. Anderson." He further testified that he left the office about ten-fifteen or ten-thirty; that when he left the office he was not aware of the fact there had been a fire at the Anderson house; that when he got there the fire trucks were there; that he saw firemen pouring water on the house, and throwing material out of the second floor window; that he did not see Mr. or Mrs. Anderson; that he went back to the office and told Mr. Taubman that he was unable to deliver the check because Mrs. Anderson was not there, but had taken her daughter who was overcome with smoke to the hospital; and that he gave the check to Mr. Taubman.

Mrs. Anderson testified that she saw Mr. Walker Monday morning before the fire. He was across the street making collections. He did not at that time attempt to give her the twelve dollars. He did not talk to her at the time. She further testified that it was three or four days later that Mr. Walker brought the check to her. The check was never cashed.

Mrs. Anderson further testified that on Tuesday, the day after the fire, she called the defendant's office and told the person who answered the phone they had a fire, and she was calling to report it. When asked what the person she was talking to said, she replied: "He said, 'Well, I'm sorry, * * * your insurance has been cancelled.' * * * I said 'My insurance is paid up,' just like that. So he says, 'Well, it is cancelled and your money is in the mail.' I said, 'Well, how would you cancel the insurance,' I said, 'after having a fire?' He said, 'Well, it is cancelled, lady.'" Mrs. Anderson further testified that she never received the twelve dollar check in the mail.

Mr. Taubman testified that the twelve dollars had been credited in the company's books to the Anderson account. In such cases Walker would be required to submit a form to reinstate the policy. It does not appear from defendant's evidence whether Walker did submit such form. Walker testified that on Monday morning shortly after he came to the office Mr. Taubman told him that Mrs. Anderson was on the phone demanding her money and stating she did not want the insurance, and that he would have to "lapse off the books".

Three or four days after the fire Mr. Taubman and Walker went to the Anderson house to view the fire damage. He stated he had been instructed to see fire damage and explain to insureds that "we mean well, even though we weren't assuming any liability. I always do that."

James E. Von Gemmingen, an independent fire insurance adjuster, at plaintiff's request prepared an itemized list of the property damaged. This list was introduced into evidence. He testified that it contained his best estimate of the amount of loss. The loss as shown on this list was $5,569.98.

At the close of the case defendant made an oral motion for a directed verdict in its favor. No grounds for said motion were stated.

The court, at plaintiff's request, gave a verdict directing instruction which required a finding for plaintiff if the jury found (1) that defendant issued the policy; (2) that plaintiff complied with the terms of the policy; (3) that plaintiff's household and personal property were damaged by the fire; (4) that plaintiff made demand for payment for said loss, and (5) defendant refused to pay said loss.

Defendant submitted its defense by Instruction No. 3, which is as follows: "Your verdict must be for the Defendant if you find:

"a. That the Plaintiff had not fulfilled all of the terms of the contract of insurance to be fulfilled by him at the time of the alleged loss; or

"b. That the contract of insurance mentioned in the evidence was not in effect at the time of the alleged loss."

As heretofore stated, the jury found for plaintiff in the sum of $2,500.00 and judgment was entered for plaintiff in said amount.

Defendant filed a motion for new trial in which there was a general allegation that the court erred in overruling defendant's motion for a directed verdict at the close of defendant's case; that the verdict was against the weight of the evidence; that the award of damages was excessive, against the weight of the evidence and based on speculation and conjecture; and the verdict was based on a mistake by the jury in misreading a document admitted into evidence entitled "Conditional Receipt". (The receipt referred to was the one signed by Walker and delivered to plaintiff's daughter at the time he took the twelve dollars on February 18, 1967.)

Thereafter, at a hearing on the motion for new trial, defendant called as a witness one of the jurors, Thomas Airis, to prove the alleged mistake complained of in the motion for new trial. The court, after an objection by plaintiff's counsel, ruled the evidence inadmissible for the reason it was an attempt to impeach the verdict by the testimony of a juror who sat in the case. However, the court received the evidence as an offer of proof. The witness then testified that in their deliberations the jury took the position that the receipt in question put the policy into effect immediately, and that by it the three day waiting period was waived. The offer of proof was then objected to by plaintiff's counsel. The objection was sustained. The motion for new trial was overruled.

■ Appellant's first assignment of error is that the court erred in failing to grant defendant a new trial for the reason that the verdict and the amount awarded by the jury was against the weight of the evidence. Under the provisions of Civil Rule 83.05(a)(3), V.A.M.R., this point presents nothing for review. Stanziale v. Musick, Mo., 370 S.W.2d 261, 265. However, we prefer to rule on the merits.

■ In developing this point defendant contends that the policy was not in effect due to non-payment of premium. Yet plaintiff's evidence shows acceptance of the premium which had the effect of reinstating the policy. Defendant's evidence shows that the premium was collected, and entered in the books of the company. This was substantial evidence that the policy was in effect at the time of the fire, and its weight was for the jury in the first instance, and for consideration by the trial court on a motion for new trial. It is not a proper matter for this court's consideration, absent an abuse of discretion by the trial court. When the trial court overruled defendant's motion for new trial the matter was conclusively determined. Manley v. Horton, Mo., 414 S.W.2d 254, 258; Bowe v. Kehr, Mo., 345 S.W.2d 224, 225; Goldman v. Ridenour, Mo., 383 S.W.2d 539, 540; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559; Stanziale v. Musick, supra. We find no abuse of discretion with respect to this matter. The same is true with reference to the size of the verdict. Defendant offered no evidence as to damages. Plaintiff offered the testimony of Mr. Von Gemmingen, a public adjuster who had been in the business of estimating fire damage for insureds for approximately thirteen years. He called at plaintiff's house after the fire and made an estimate of plaintiff's loss. He then prepared a list which placed the loss at $5,569.98. The evidence was conflicting on the issue of cancellation. In our judgment plaintiff's evidence on this issue was more credible than the evidence produced by defendant. We rule against defendant on its first point.

Appellant's second point is that the court erred in sustaining an objection to defendant's offer of proof presented to show a mistake by the jury as to the effect of the receipt given by Walker when he took the twelve dollars from Mrs. Anderson's daughter. The offer of proof was made after the court sustained an objection to the testimony of Juror Airis on the ground that it

was an attempt to impeach the verdict by testimony of a juror.

 Defendant relies on Civil Rule 78.01, V.A.M.R., which provides, among other things, that a court may award a new trial where there is a mistake by the jury. In our opinion the rule does not authorize the setting aside of a verdict on the ground that the jury through faulty reasoning misinterpreted the meaning of the words of an instrument offered in evidence. To do so would permit a second trial in every case to challenge the reasoning processes of the jurors. Faulty logic and strained reasoning on the part of the jury may not be inquired into. It may well be that there are mistakes by a jury that are proper subjects for determination, such as subscribing to the wrong verdict form, or the returning of a verdict, not unanimous, signed by less than nine jurors. In such a case a verdict might properly be set aside. But the rule relied on does not permit a juror to impeach a verdict on the ground relied on in the case at bar. It is not such a mistake as is contemplated by the rule. It would violate the time honored rule that the jury's privacy shall not be invaded. A juror will not be heard to impeach the verdict of a jury of which he was a member. McFarland v. Bellows, 49 Mo. 311; Philips v. Stewart, 69 Mo. 149; State ex rel. Kansas City Power & Light Co. v. Campbell, Mo.App., 433 S.W.2d 606; State ex rel. State Highway Commission v. Anderson, Mo.App., 367 S.W.2d 809; Songer v. Brittain, Mo.App., 272 S.W.2d 16.

Appellant's final point, which appears for the first time in the argument portion of its brief, is that plaintiff is not entitled to recover for the reason that under the terms of the policy plaintiff's property, although originally covered, was not covered on February 18, 1967, the day of the fire. In advancing this contention defendant relies on the terms of the policy which provide for reinstatement after lapse upon acceptance of premiums in arrears, but only for coverage of a loss sustained more than three days after such acceptance.

In its answer defendant failed to plead as a defense the foregoing provision of the policy. At the trial the defense sought to be established by defendant's evidence was that the policy was cancelled at plaintiff's request. No mention of such theory can be found in defendant's motion for new trial and, as heretofore stated, it is not set up in the Points Relied On in defendant's brief.

 We cannot consider the point urged. Under Civil Rule 83.05, V.A.M.R., and cases construing same, an appellate court will not consider a claim of error where appellant fails to raise such issue in his motion for new trial, nor in the Points Relied On portion of his brief. Johnson v. Hunter, Mo.App., 398 S.W.2d 449; Jeans v. Jeans, Mo.App., 348 S.W.2d 145; Landau v. St. Louis Public Service Co., Mo., 347 S.W.2d 870; Hastings v. Coppage, Mo., 411 S.W.2d 232. Furthermore, appellate courts are merely courts of review and there can be no review of a matter not presented to and expressly decided by the trial court.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by LYON ANDERSON, Special Commissioner, is adopted as the opinion of this court. The judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.