## ADA THOMPSON, Appellant, v. KEYES-MARSHALL BROTHERS LIVERY COMPANY.

### Division One, November 25, 1908.

1. **NEGLIGENCE: General Allegations: Specifications.** A general charge of negligence, followed by specifications of particular acts, is; as a general rule,˙ merged into the specifications, or rather the specifications are deemed as explaining what the general charge is intended to mean.

2. ———: ———: .Two Acts in Same Count. In a petition in which a personal injury is alleged to have been suffered through the negligence of defendant, the pleader is not limited to one act of negligence, or to two or more of the same kind, either of which or all of which together might have produced the same result. That form of pleading is not violative of the rule that not more than one cause of action can be stated in one count, because each and all the several acts point to but one injury. In the same count may be included an act or acts constituting negligence at common law and an act or acts of negligence under a statute or ordinance, if all point to the same result and are not inconsistent.

3. ———: ———: ———: **Specifications: At Common Law and Under Ordinance.** The petition in this case stated a complete cause of action at common law and another under the ordinance, and the one at common law, containing as it does both charges of negligence and specific acts, was not merged in the one of negligence for a violation of the ordinance.

4. ———: ———: ———: **No Ordinance.** Where the petition states a good cause of action at common law and one for a violation of the ordinance, in the same count, and the court sustained a demurrer to plaintiff's case on the ground that she was guilty of such contributory negligence as barred a recovery, the court's action will not be sustained for that no ordinance was introduced in evidence, if the defense of contributory negligence under the common law count cannot be sustained as a matter of law.

5. ———: **Struck by Team on Street: Contributory Negligence.** Plaintiff and her sister were standing, with other persons, at the northwest corner of a street crossing, waiting for a west-bound car. The sister saw defendant's carriage˙a block away, driving fast towards them, but saw it no more until it struck plaintiff, standing ten feet east of her, just as both were in the act of getting on the car. Plaintiff, who was a girl seventeen years

old, noticed the team driving fast a half block away, and testified that "before I knew it was up by me," and testified that "it continued to come at a very rapid rate until it struck me." *Held*, that her testimony clearly indicates that she saw it only a half block away and just as it struck her, and that her statement that "it continued to come at a very rapid rate" was a conclusion from the facts, and a reasonable one, and her testimony did not show contributory negligence, and the court erred in sustaining a demurrer to the evidence on that ground.

6. ———: **Irrelevant Testimony.** Where there was no charge in the petition that the horses which ran against plaintiff and injured her had got beyond the driver's control, but on the contrary the prevalent idea of the case is that the accident occurred through the driver's fault, it is not error to strike out the testimony of a witness that "the driver did not seem to have good control of the horses." The testimony was not relevant to the issues.

7. ———: ———: **"To Avoid Injury."** Testimony by a witness, who was standing near the injured plaintiff and her sister, saw the horses coming and in jumping on the car struck the sister and knocked her down, that "to avoid the team I jumped on the front end of the car instead of getting on in the usual way," was properly struck out. It was the opinion of a witness not called for by the situation.

*Held*, by **WOODSON, J.,** dissenting, that the witness's testimony as to why he jumped on the car in such haste as to knock plaintiff's sister down, characterized his act and the situation, which could only be shown by oral testimony. His act bespoke his fear, and cannot be understood without the explanation contained in the words "to avoid the team."

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

REVERSED AND REMANDED.

*J. F. & R. H. Merryman* for appellant.

*Seddon & Holland* for respondent.

VALLIANT, P. J.—Plaintiff sued for damages for personal injuries sustained by her through, as she alleged, the negligence of defendant. At the close of the plaintiff's testimony the court gave an instruction

to the jury that she could not recover because she was guilty of contributory negligence, the verdict of the jury was for the defendant and the plaintiff appealed.

Plaintiff in her petition states that she was standing in Olive street near the corner of Ninth street at the crossing in a business center of the city greatly traveled by persons on foot, waiting for a west-bound street car, "when defendant by its agents and servants violently ran a team of horses attached to a vehicle into and against plaintiff; said horses knocking plaintiff down and trampling her under their feet, thereby severely wounding and injuring plaintiff; that the injury to plaintiff was due to the carelessness and negligence of defendant's agent in driving said horses attached to said vehicle at the time and place aforesaid and in violently running into and against plaintiff.

"Plaintiff further states that at the time of the injury aforesaid there was in full force and effect in the city of St. Louis an ordinance of said city known as section 1473 of the Municipal Code of St. Louis, Edition 1901, which provides that 'no person who shall in this city ride or drive any animals in any highway, thoroughfare or public place quicker than or beyond a moderate gait, or shall not slacken the pace of such animal or animals in approaching any cross walk upon which any person may be . . . in the act of approaching or leaving a street car, or shall ride or drive any such animals so as to cause any such animal or any vehicle attached thereto to come in collision with or strike any other object or person . . . shall be deemed guilty of a misdemeanor.' "

Then the petition alleges that the defendant did drive the horses "quicker than a moderate gait and did not slacken the pace," etc., following the language of the ordinance specifically charging the doing of the acts therein forbidden and that in consequence of the

violation of the ordinance the team was violently and negligently run against plaintiff, knocking her down, etc.

At the trial there was evidence tending to show that the defendant did negligently run the team of horses against plaintiff inflicting the injuries as stated, but the plaintiff did not introduce the alleged ordinance in evidence and her failure to do so is relied on by defendant as the first ground which justified the court in giving the peremptory instruction. It was not on that ground, however, that the court gave the instruction. The instruction as asked was general in its terms, saying in effect that plaintiff was not entitled to recover; the court refused to give it in that form, but added as the specific reason for giving it that "she having been shown by the evidence to have been guilty of contributory negligence as a matter of law."

I. The insistence of the defendant is that what precedes the paragraph in the petition wherein the ordinance is pleaded is only a general charge of negligence, and that the ordinance and the specifications of acts in violation of it are but specifications under the general charge and that plaintiff is limited to those specifications; and in support of that contention defendant cites a number of cases, first being McManamee v. Railroad, 135 Mo. 440, wherein at page 447 this court said: "The practice is well established in this State that when a general allegation of negligence, like this, is followed by an enumeration and averment of specific acts of negligence, the plaintiff will be confined to the negligence specifically assigned."

That rule of interpretation is not a technical rule applicable only to pleading, but is a general rule of construction. A general charge of misconduct followed by specifications of particular acts is, as a general rule, merged into the specifications, or rather the specifications are deemed as explaining what the general

charge is intended to mean. That is only the converse of the *ejusdem generis* rule of construction, which is a rule of common sense and is aimed to ascertain the true intention of the writer of the document then being construed.

In a petition in which a personal injury is alleged to have been suffered through the negligence of the defendant the pleader is not limited to one act of negligence, or to two or more acts of the same kind, but may plead in the same count several acts, not inconsistent with each other, either of which or all of which together might have produced the result complained of. That form of pleading is not in violation of the rule that not more than one cause of action can be stated in one count, because each and all the several acts pleaded point to but one injury, one wrong or, in technical language, one *injuria,* for which reparation is asked. It is, therefore, competent to include in one count an act or acts constituting negligence at common law and an act or acts of negligence under a statute or ordinance all pointing to the same result. Section 629, Revised Statutes 1899, Ann. Stat., p. 652, is: "In the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties." Keeping that mandate in mind when we come to applying the rule of construction we are now considering to a petition like the one in the McManamee case above mentioned and like the one in the case at bar, our safe course "with a view to substantial justice" is to ascertain what was the intention of the pleader, did he mean to charge two acts of negligence, one at common law and one under the ordinance, or did he mean to charge one act alone and that one under the ordinance?

But in endeavoring to give effect to the intention of the pleader we must not overlook the fact that what

he says in his pleading is the tendering of an issue to his adversary and he must say what he has to say in terms that his adversary will understand. Therefore in construing the petition the inquiry must not stop at what the pleader probably intended, as that intention may be gathered from his conduct when the trial is over, but also what the defendant had reason to understand from the petition was the issue tendered.

So it may be said of the petition in the case now to be passed under judgment, if the facts stated in the petition, preceding those concerning the ordinance and the acts in violation thereof, are not to be understood as intended by the pleader to state a case of negligence at common law, then, we must understand that he intended to plead but one act of negligence and that one the violation of the ordinance. The first question therefore is, what was the intention of the pleader as shown by the petition? Looking to that part of the petition which pleads the ordinance and the acts in violation of its terms we see that they are sufficient in themselves without reference to the preceding paragraph to constitute a cause of action, therefore there is no necessity for referring them back as specifications under the supposed common law charge. The statements concerning the ordinance and the acts in violation thereof are not aided by reference to the preceding paragraph, because every fact stated in that paragraph which might be deemed necessary to complete the charge of negligence under the ordinance, is industriously repeated in the next succeeding paragraph pleading the ordinance. If therefore the first paragraph does not show an intention to state facts constituting a common law act of negligence it is a useless clause and could be stricken out of the petition without impairing its force. Then why is it in the petition? What did the pleader intend by it? What must the defendant have understood from read-

ing it that the plaintiff meant by it? We are satisfied that he intended by it to plead an act of negligence under the common law, and then follow it by pleading an act of negligence under the ordinance, and we think the defendant must also have so understood it.

. But even if he did intend to plead a common law act of negligence the question still remains, did he accomplish what he intended? On this question, Thompson on Negligence, vol. 6, page 488, says: "If the pleading fairly informs the opposite party of what he is called upon to meet, and the specific acts of negligence are followed by a general statement that they were negligently done; or if it fails to state these facts with particularity and the opposite party nevertheless fails to claim a surprise or take the necessary steps to extricate himself from the difficulty—there ought not to be much trouble about the question."

The petition in this case says that plaintiff was standing in the street where, under the circumstances stated, she had a right to be, "when defendant, by its agents and servants, voluntarily ran a team of horses attached to a vehicle into and against the plaintiff; said horses knocking the plaintiff down and trampling her under their feet thereby severely wounding and injuring plaintiff; that the injury to plaintiff was due to the carelessness and negligence of defendant's agent in driving said horses attached to said vehicle at the time and place aforesaid and in violently running into and against plaintiff." In what respect is that declaration wanting in specification? It describes the situation, the plaintiff's position and the environments and then says that the defendant drove its horses against her violently, knocking her down and trampling on her, and that it was due to the driver's negligence in driving the horses. What other act could she specify? Driving a team of horses at rapid gait into a narrow space where people are standing in plain view of the

driver, is prima-facie evidence of negligence and the statement of such acts accompanied with a charge of negligence is a specification of acts of negligence. Such is the substance of the statements in the petition in this case in stating the act of negligence under the common law. We do not see what more the plaintiff could have said than she did say to make out a charge of common law negligence. The trial court seems to have so construed the petition, because it refused to give a general peremptory instruction, but limited it to the specific ground that plaintiff was guilty of contributory negligence. We hold that the petition sufficiently states a case of negligence under the common law, as well as under the ordinance.

II. Was the court justified in taking the case from the jury on the ground of the plaintiff's supposed contributory negligence?

The answer to that question is to be found in the evidence showing whether not the plaintiff saw the horses and carriage coming when they were so near and coming in such a manner that she had cause to apprehend that they would run against her unless she fled out of the way. The natural instinct of self-preservation is almost a conclusive answer to that question. Can we imagine a girl seventeen years old, in her right senses, seeing a team of horses coming at a rapid gait, aiming to pass through a narrow space where she was standing, threatening injury to her if she did not get out of the way, yet standing there deliberately until she was run over and trampled under the feet of the horses? It is almost beyond belief; it is certainly beyond reasonable expectation. Yet that is the contention, and that is what the contributory negligence theory is based on.

The evidence showed that this plaintiff and her sister had stopped at the northwest corner of Ninth and Olive streets to take a west-bound street car on

Olive street. The sister testified that looking east, from which direction the car was expected, she saw the carriage coming when it was just east of Eighth street, it was being driven rapidly, she did not see it or notice it any more until the horses struck her sister and knocked her down. As she saw the car draw near she and her sister, the plaintiff, stepped off of the sidewalk and stood waiting for the car between the curb and the railroad track four or five feet from the track. Witness was standing about a car's length from the west crossing of Ninth street, the plaintiff about ten feet further east. There were several other persons standing there apparently to board the car, and as it approached the horses drawing the carriage came fast into the space between the track and the curb, a man who was standing between her and the plaintiff jumped on the front platform of the car and in doing so collided with the witness and knocked her down, the horses collided with the plaintiff and knocked her down, some one in the street seized the horses and stopped them. Cross-examination: "Q. You did not see those horses a little while before they struck her? A. I saw them just as they struck her. Q. So that you are not in a position to tell how they were moving at that time? A. Surely I saw them driving fast. Q. How long? A. From the time they left Eighth street until they struck her. Q. But you know the rate at that street, you say? A. Yes, sir, I was not looking all the time at the horses. Q. Off and on you saw them approaching rapidly from the time you saw them at Eighth street until the time of the accident? A. I never noticed any more only I saw that he was driving very fast. Q. Did you notice them at all, is what I want to find out, between the time that you first saw them at Eighth street and the time of the accident? A. I didn't see them until they struck my sister; drove up over her."

The plaintiff herself testified to the situation in which she and her sister were standing waiting for the car substantially as her sister had testified. She said that she noticed the victoria coming, over half a block away, driving at a very fast speed. "The victoria came on before I knew it was up by me, I noticed it half a block away driving at a fast speed. Before I knew it was up by me, it came along and hit my left shoulder and knocked me down and knocked my right knee cap off." On cross-examination: "Q. Well as you were standing there you say you noticed the victoria a half a block away from you coming at a rapid rate? A. Yes, sir. Q. You noticed it coming at a rapid rate at Ninth street? A. It knocked me down. Q. As it passed over Ninth street there, did you notice it? A. It was driving very rapidly all the time. . . . Q. While standing there you noticed the victoria coming westwardly at a rapid rate? A. Yes, sir. Q. And it continued to come at a rapid rate until the horses struck you? A. Yes, sir. . . . Q. You still stood there between the tracks and the curb? A. Oh, yes. Q. Now can you tell us, did you see this team when it was fifteen or twenty feet east of you? A. I saw it over half a block away. Q. When was the last time you saw it? A. Just as it was up by me and knocked me down."

That is the evidence on which it is insisted the plaintiff saw the victoria as it was coming fast all the way from near Eighth street until it was driven into the narrow space between the track and the curb where plaintiff was standing. She testified in chief that she saw the victoria over half a block away coming fast, and "before I knew, it was up by me, it came along and hit my left shoulder." If she had been looking at it all the way it would not have been up by her and hit her before she knew it. The cross-examination was very skillful, and was aimed to bring

out the fact that she had seen it all the way, but the nearest she came to so saying was in answer to a leading question, ''And it continued to come at a rapid rate until the horses struck you? Yes, sir.'' Take that in connection with her statement on that point in chief and with what further followed in the cross-examination: ''Did you see this team when it was fifteen or twenty feet east of you? I saw it over half a block away. When was the last time you saw it? Just as it was up by me and knocked me down.'' She was justified in answering yes to the leading question if the horses were not moving at a rapid gait all the while from the time she first saw them until they struck her, because she saw that they were going fast when she first saw them and were going fast when they struck her, and she had a right to conclude that they went fast all the while, but it was a mere conclusion, she never meant to say that she saw them all the way and it is unreasonable to presume that she did; if she had seen them coming against her and realized her danger she would not have stood there and been run over. It would be a forced construction put on her words to say that she intended to convey the idea that she saw the horses and carriage all the while; she did not say so, she only mentioned two points at which she saw them, one when they were near Eighth street, the other when they struck her.

But having seen the team when it was a half a block or more away, was she failing in her duty to use ordinary care for her own safety by not keeping her eye constantly on the team so as to be ready to run to the sidewalk when the danger became imminent? No, she had a right to presume that the driver would slacken his speed and either turn aside or else stop before running into the narrow space where he saw people standing. The law laid upon her no duty to anticipate that the man would behave in that way.

We are of the opinion that the plaintiff neither saw the danger nor failed to use ordinary care to discover it. The court erred in its judgment that the plaintiff was guilty of contributory negligence.

III. The testimony of one of the plaintiff's witnesses, the man who jumped on the car in such haste that he knocked the plaintiff's sister down in doing so, was read from the record of his evidence taken at a former trial of this cause. In the course of his examination was this: "Q. What do you say about the driver? A. The driver did not seem to have good control of the horses." On motion of defendant the answer to that question was stricken out. There was no error in that ruling, because that answer was irrelevant. There was no charge in the petition that the horses had got beyond the control of the driver, on the contrary the prevalent idea in the plaintiff's case was that the accident occurred through the driver's fault, not that it was from a cause beyond his control. He also testified that he saw the team coming very rapidly and "to avoid the team I jumped on the front end of the car instead of getting on in the usual way." The court on motion of defendant struck out the words "to avoid the team." This man was one of the persons standing in the street intending to board the car, he stood between the plaintiff on his left and her sister on his right. It seems that the car and the team of horses reached the place about the same time, the witness said that he saw the horses coming very fast, he jumped on the front end of the car in what he said was not the usual way, and it appears from the evidence of other witnesses that he was so hasty in his act that he struck against the plaintiff's sister and knocked her down. Why did he behave in that unusual manner? If it was because he feared being struck by the team that would indicate that in his opinion there was a sudden danger. But

suppose instead of saying what he did say he had said that he was standing on the sidewalk, saw the horses coming very rapidly into the space where people were standing, and that in his opinion the horses were coming in a manner to threaten danger to the people there, would his opinion be competent evidence? We think not, and it is immaterial whether the opinion be expressed in one form or another. The situation produced by the coming of the horses on the scene was either so dangerous that the court would be justified in so declaring, in which case no outside opinion evidence would be needed, or else the question of whether it was so or not was one for the jury, to be determined, not by the opinion of witnesses, but by a consideration of the facts and circumstances shown by the evidence.

There was no error in striking out those words.

The judgment is reversed and the cause remanded to the circuit court to be re-tried according to the law as herein expressed.

*Lamm* and *Graves, JJ.,* concur; *Woodson, J.,* concurs in the result and in all except paragraph 3, as to which he files a separate opinion.

## SEPARATE OPINION.

WOODSON, J.—I concur in the first and second paragraphs of the opinion, but dissent as to the third, for the reason that the testimony of the witness as to why he jumped on the car in such haste, so as to knock plaintiff's sister down, characterized his act and the situation as it then and there existed, which cannot speak for themselves, but could only be shown by oral testimony.

To illustrate, suppose at the instant of the accident the witness had exclaimed, "I jumped on the car in order to prevent being struck by the horses." Clearly that expression would have been admissible as constituting a part of the *res gestae.*

It is apparent the expression would not be admissible simply because he uttered it, but because it characterized his act and showed why he acted in such haste, namely, the dangers he and the other persons standing there were subjected to, caused by the reckless driving. In the case at bar his act bespoke his fear, and not his words, as in the supposed case. Both, however, stand upon the same footing as characterizing his act. That which caused the act is the soul of the act and cannot be understood or explained without first ascertaining the cause or motive which prompted it. I therefore am of the opinion that the testimony was competent, and should have been admitted and that the judgment should be reversed.