Nancy Jo WATTS, by her Next Friend and father, Loye Watts, Plaintiff-Respondent,

v.

James Leroy HANDLEY and Vance Brothers, Inc., Defendants-Appellants.

No. 24771.

Kansas City Court of Appeals.

Missouri.

April 1, 1968.

William H. Sanders, Dean F. Arnold, Thomas I. Osborne, Kansas City, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel, for appellants.

Lloyd S. Hellman, Donald D. Weinstein, Achtenberg, Sandler & Balkin, Kansas City, for respondent.

MAUGHMER, Commissioner.

This case grew out of an automobile collision. On the morning of July 18, 1963, the plaintiff, Nancy Jo Watts, then 16 years old, was driving her mother's 1959 Ford station wagon west on U. S. Highway 40 and near its intersection with Highway 71 By-Pass in Jackson County, Missouri. Highway 40 at that location was a one way (west) roadway. The defendant, James Handley, was then and there operating a 1957 tractor trailer truck in the same direction, but somewhat to the rear of the Ford. The truck was owned by the defendant, Vance Brothers, Inc., and Handley was that com-

pany's agent and employee and was at the time engaged upon company business. Vehicular movement at the intersection was controlled by traffic lights. There were two lanes for the westbound traffic.

The plaintiff testified that as she approached the intersection she was in the right-hand lane and when she stopped for the red light, was back of five or six other vehicles which were also stopped. She said the light turned green but the cars moved so slowly that the light was yellow as she came to the intersection and so she again stopped; that she then looked in her rear view mirror, saw defendant's truck directly behind her and thought it was going to hit her. It was her testimony that immediately thereafter she was struck "in the left rear and turned sideways into a guard rail there at the right-hand side of the road." After her automobile came to rest she described the position of the truck as being in the left lane with its nose clear through the intersection. Mr. Handley came over and inquired if she was hurt. She replied: "I don't think so." On the witness stand she stated that she received cuts and bruises, felt stiff and dazed and had pain in her neck.

Trooper R. C. Dallam, patrolman, Missouri State Highway Patrol, investigated the accident—in fact he was nearby when it occurred—heard the crash and "saw the vehicles before they came to a stop." We quote from his testimony:

"When I looked, the tractor was practically side by side of the car. I could see the front portion of the car and the tractor was—appeared it was attempting to pass the car."

Trooper Dallam was permitted to testify over defendants' objection that the place where he observed the "first debris or shakedown * * * *was the point of impact*", (our italics) and that the plaintiff's car came to rest 49 feet away from the place of impact and up against a barricade at the side of the road. Plaintiff read from the deposition of the defendant James Leroy Handley. Therein he stated that plaintiff

stopped when the light turned orange; that he thought she was "fully stopped" when he hit her and that when the light turned orange he was about eight car lengths back of plaintiff and traveling about 15 miles per hour. This is a summary of the testimony offered by the plaintiff. However, she relies upon the following comments or admissions made in the opening statement by defendants' counsel:

"Handley, sitting over here, ran into the rear end of this girl. * * * I am just telling you he ran into the rear end of her and there isn't any question about that. He hit her car a pretty good lick, there isn't any question about that." "If you find that Handley is wrong over here, which you may well find, you may find we've got about a hundred and fifty dollar lawsuit; that's about all it is."

In this opening statement defendants' counsel talked about a signed statement of plaintiff. It was not offered in evidence. He stated that the defendant Handley would testify that plaintiff suddenly stopped. Mr. Handley was not called as a witness nor was any part of his deposition read by the defendants. In fact the defendants offered no testimony whatever as to how the accident occurred.

The plaintiff visited Dr. Mueller the day after the collision. He gave her some pain pills and scheduled x-rays for the following day. He did not see her again nor did he testify. However, he was an office associate of Dr. Cecil Leitch, who examined the plaintiff on July 20, 1963, and also produced Dr. Mueller's records. Dr. Mueller's written records indicated that his examination was completely negative, although he did prescribe some relaxant pills. The plaintiff told Dr. Leitch that her only injury was the jerking of her head and neck. Dr. Leitch examined plaintiff again on August 10, 1963, and found that her neck was normal and she had no complaints at that time.

On June 20, 1964, plaintiff was examined by Dr. Harold Woods. She told Dr. Woods that she had injured her neck and back in the accident. Dr. Woods's findings as to her neck were essentially negative but he did find some tenderness and muscle spasm in the back.

The plaintiff resumed work the day after the accident, as cashier in one of her father's restaurants. She attended her senior year in high school the following winter, was one of the cheer leaders, and engaged in various activities. The following year she attended William Woods College and then returned to Kansas City and went to work as a legal secretary.

Dr. Frank Feierabend examined plaintiff on May 6, 1966, on behalf of defendants, for the purpose of testifying in this lawsuit. His findings were negative.

At the close of the evidence, which we have summarized above, the trial court gave Instruction No. 2 as follows:

"The Court instructs the jury that you shall find the issues in favor of the plaintiff on her claim for damages and you must award the plaintiff such sum as you believe will fairly and justly compensate her for any damages you believe she sustained as a direct result of the occurrence mentioned in evidence."

The Court submitted to the jury only one form of verdict which was Instruction No. 5 as follows:

"We, the jury, find the issues in favor of the plaintiff and assess plaintiff's damages at $—— (stating the amount)."

During the jury argument of plaintiff's attorney, a colloquy occurred between counsel and the Court which must be mentioned. The plaintiff's attorney had picked up the defendants' attorney's reference in his opening statement to this suit being about a $150 case and commented about it in his argument to the jury. The defendant objected to the argument, claiming that such statement was not an admission of injury. The Court then stated:

"The Court's instruction is such that the jury can award no amount of money for the damages."

"MR. HELLMAN: Your Honor, there must be some injury or the Court would not have directed a verdict. May I argue that?

"THE COURT: It is possible, under the instructions, that the jury could find no injury. However, Mr. Sanders made the statement and fixed $150 for injuries at the beginning of the case."

We do not regard the statement that plaintiff had sustained damages in the amount of $150 as a judicial admission. The trial was mostly a controversy as to whether or not plaintiff had sustained any injuries.

There was a jury verdict for the plaintiff in the sum of $2500 and defendants have appealed. Assignment No. 5 claims the Court erred in personally interrogating the witness, Dr. Woods. We do not believe the Court exceeded its discretion in that particular and in any event the incident giving rise to the claim of error will probably not occur on a retrial. The 6th assignment objected to the argument of counsel claiming that it consisted of "abusive name-calling" of the doctor who testified for the defendants. We do not believe this issue will likely arise in a second trial.

■ Assignment No. 1 asserts that the Court erred in permitting State Trooper Dallam to state just where the collision occurred. Any witness may point out the location of debris or shakedown, but even skilled investigators may not state their conclusions as to the exact spot of the collision. The objection should have been sustained. Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242; Chester v. Shockley, Mo., 304 S.W.2d 831, 834. However, the error was harmless here since it had to do solely with liability, and as will appear, we believe the Court on the issue of liability properly directed for plaintiff.

■ The second assignment charges the trial court with error in directing a verdict in favor of plaintiff as to liability. It is of course a rare case where this should be done. Probably it should not be done even when there is no testimony whatever offered by the defendant for the simple reason that the jury might not believe the plaintiff's story. However, in the case before us we not only have the plaintiff's testimony but from the deposition of the defendant Handley a statement that plaintiff's vehicle was stopped when he rear-ended it. We also have the admission of defendants' counsel in the opening statement that the truck ran into the rear end of plaintiff's vehicle, hit her car a pretty good lick and that there wasn't any question about it. True, counsel for defendants in this opening statement talked about contributory negligence on the part of plaintiff but he offered no testimony to that effect. We believe the trial court did not err in directing a verdict for the plaintiff on the issue of liability.

There seems to have been some confusion during the trial as to whether or not the Court had directed the jury to return a verdict for some amount of money or whether the jury could find the plaintiff suffered no injuries and for that reason returned a verdict for defendants. The Court, when the matter came up during the closing arguments, said first the jury could find no injuries, but then commented that counsel for the defendants had fixed the amount of injuries at $150. Unquestionably, the issue as to whether or not plaintiff suffered injuries was controverted and contested during the trial. The defendants did produce medical evidence on this issue. The plaintiff herself was cross-examined fully about it, admitted she made statements that she was not hurt and admitted that she complained of no pain on various occasions when she was visiting doctors; admitted, too, that immediately after the accident and up to the time of trial she had engaged in various physical activities in school and elsewhere.

■ We believe that under Instructions No. 2 and No. 5, set out, supra, the Court did in effect direct a verdict for plaintiff, not only on the issue of liability, but also as to damages.

On appeal plaintiff takes the position that the Court did direct the jury to return a verdict for some amount in money and cites Stroud v. Masek et al., Mo., 262 S.W.2d 47 and Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, 145 A.L.R. 1176, which it is claimed hold that "for every actionable injury there is a corresponding right to damages and such an injury arises whenever a legal right of plaintiff is violated." This is the theory that plaintiff in every case of negligence is entitled to at least nominal damages. We do not believe that is the rule in Missouri. We cite three cases in support of such conclusion. Biscoe v. Kowalski et al., Mo., 290 S.W.2d 133; Eichmann v. St. Louis Public Service Co., 363 Mo. 651, 253 S.W.2d 122 and Wise v. Towse, Mo.App., 366 S.W.2d 506. In the last case this court analyzed the two Supreme Court cases which we have just cited and said:

"We can only conclude our Supreme Court holds that in a claim for damages for personal injuries resulting from another's negligence, an admission by defendant that its negligence caused the collison which plaintiff claims caused his or her alleged injuries is not sufficient to entitle plaintiff as a matter of law to at least nominal damages because it fails to take into account the third necessary element of the action, namely, that some resulting injury to plaintiff must be proved or admitted. This is in accord with such text authorities as Prosser, Law of Torts (2nd Ed.) Chapter 6, page 165. 'Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred.' * * * 'Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered.' "

We affirm the action of the trial court in directing a verdict for plaintiff on the question of liability, but remand the case for new trial on the question of damages only.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD, P. J., CROSS, J., and SHANGLER, Special Judge, concur.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.