Billy J. BARLOW and Laverne Barlow, his wife, Appellants,

v.

Douglas J. THORNHILL and Wieton W. Pierce, Respondents,

and

Woodrow M. Lewis, Defendant.

No. 59073.

Supreme Court of Missouri

En Banc.

May 5, 1976.

Rehearings Denied June 14, 1976.

**414**

Roland A. Wegmann, Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, Hillsboro, for appellants.

Evans & Dixon by Eugene K. Buckley, St. Louis, for respondents.

BARDGETT, Judge.

Plaintiffs-appellants Billy and Laverne Barlow sued respondents Thornhill, Pierce, and Lewis for damages resulting from two rear-end collisions. The jury verdict was in favor of Billy Barlow and against Thornhill and Pierce in the sum of $63,000 and in favor of defendant Lewis. The jury found against Laverne on her consortium claim. Following judgment, the trial court set aside Billy's judgment against respondent Thornhill in accordance with Thornhill's trial motion for directed verdict. The court granted Pierce a new trial for error in Billy's damage instruction and granted Laverne a new trial on all issues against Pierce.

Plaintiffs appealed to the Court of Appeals, St. Louis District, which by opinion affirmed the trial court's judgment.

On application of plaintiffs-appellants, this court ordered the cause transferred. Art. V, sec. 10, Mo.Const., as amended S.Ct. Rule 83.03.

On July 23, 1971, plaintiff Billy Barlow was a passenger seated in the right rear seat of defendant Lewis's car which was going west on Highway 40 in St. Louis county. Highway 40 at the place where the collision occurred has two lanes westbound and two lanes eastbound with a median strip between them. The Lewis car was in the inside, or southern westbound lane. Lewis was going to turn left in a crossover in order to go back east on the highway. He had slowed down to about 5–10 m. p. h. when his car was struck in the rear-end by defendant Thornhill's car. The Thornhill car then slid sideways to the north and struck a Mr. Klingert's car which was also westbound and in the outside right, or northernmost lane. The impact between Thornhill and Lewis was light. It dented Lewis's rear bumper and trunk. Lewis's car proceeded into the median and stopped headed west. Thornhill's car came to a stop across the westbound lane and then proceeded into the median. Klingert's car went north—to its right—and stopped either all the way off the pavement or with about the rear half of the car on the right-hand westbound lane. Klingert and Lewis said Klingert's car was all the way off the pavement.

After the above-mention collisions occurred, the drivers and some of the passengers got out of their cars and began exchanging information while standing in the median. It began raining so they got into the Lewis and Thornhill automobiles with Billy Barlow returning to the rear seat of the Lewis car. Within a few minutes, the Pierce car, which was westbound, struck the Thornhill car and then hit the rear-end of the Lewis car. This impact threw Barlow about inside the car and after he got out of the car he was vomiting and had trouble breathing. This last collision took

place 10 to 15 minutes after the initial collision.

As to the last collision, defendant Pierce testified he was westbound in the right-hand or northern lane; that he saw the Klingert car stopped partially onto that lane of traffic and the Lewis car was partly onto the left or southern westbound lane; that he, Pierce, turned left a bit to go between the cars and applied his brakes; that he skidded into the Thornhill car and, continuing on, collided with the rear of the Lewis car. Defendant Pierce and officer Leavitt, who investigated the collisions, testified the Klingert car was partially on the pavement. Klingert's car was not driveable and remained in its original stopped position until towed away, and this was after officer Leavitt arrived on the scene.

Mr. Barlow described the first collision as a "light impact", that he was not thrown around in the car by it, and immediately following that collision he was excited but he was not aware of any physical pain at that time. He described the second collision as more severe and it was after this collision he felt discomfort and physical pain.

Following the last collision, Mr. Barlow had difficulty breathing, was vomiting, and had pain in his rib cage. He was taken from the accident scene to St. John's Hospital where he was X rayed, given a prescription, and told to see his family doctor and was sent home. The next day he had pain in his back from the neck down and pain in his ribs. He went to work on Monday but could not do his job because of pain in his back and because his feet and legs had become swollen. The next day, Tuesday, July 27, 1971, he saw Dr. Glen Calvin, a general practitioner. Mr. Barlow's initial complaints were swelling in his hands, arms and legs; headaches, neck pain, back pain, and severe pain on bending or stooping. The doctor observed the swelling and found muscle spasm in Barlow's neck, mid-thoracic area and lower back. Mr. Barlow made 137 visits to Dr. Calvin's office as of May 29, 1973, one month prior to trial.

In answer to a hypothetical question, Dr. Calvin testified that in his opinion the complaints of Mr. Barlow and the injures found by Dr. Calvin were caused by both collisions. He testified he could not attribute the injuries to either the first or second collisions nor separate the effects of the two collisions with respect to causation of the injuries. In his opinion, the injuries were caused by both collisions. The doctor was asked to assume that following the first collision there was no immediate onset of symptoms and then asked if this would indicate that no injury was sustained in the first collision. The doctor answered that, in his opinion and based on his experience, most patients who have sustained that type of trauma are symptom-free for awhile, in the absence of lacerations, etc., and that trauma of that kind does not ordinarily produce spasm for 48 to 72 hours. In Dr. Calvin's opinion, Mr. Barlow was still disabled and unable to work as of trial time. On cross-examination, the doctor testified that he had no way of knowing whether or not the first collision, without the second collision, would have produced the same symptoms.

Mr. Barlow was hospitalized at Deaconess Hospital from August 7 to August 21, 1971, under the care of a Dr. Manganaro. The diagnosis was cervical sprain, thoracic sprain, lumbar sprain, contusion of the soft tissue with injury, right thorax. Subsequently Mr. Barlow was examined and treated at Mayo Clinic, Rochester, Minnesota, and a report was sent to Dr. Calvin, which was read into evidence. Mayo's diagnosis was post-traumatic syndrome and tinea cruris, pedis, and manus. No objective evidence of any neurologic impairment was found nor was there objective evidence of spinal cord disease or cervical or lumbar radiculopathy. A psychiatrist at Mayo believed Mr. Barlow was demonstrating a conversion reaction.

Dr. Walter Moore, a specialist in neurology and psychiatry, examined Mr. Barlow in August 1972 and testified as to Barlow's complaints, his examination, finding, and diagnosis. He found nothing organically

abnormal with the patient from a neurological standpoint. Dr. Moore's diagnosis was a post-traumatic psychoneurosis with conversion reaction, marked traumatic fixation with total invalid reaction, all of which the doctor explained to the jury.

In answer to a hypothetical question, Dr. Moore testified that the two collisions were the effective precipitating cause of the psychiatric condition of Mr. Barlow. He was questioned with respect to the causative effect of the first and second collision. The doctor testified the patient's condition was caused by a combination of the two collisions and ascribed very little weight to the relative severity of the two saying that a man does not have to have a severe physical accident to develop a severe neurosis. When asked if he could separate the two collisions with respect to the neurosis the doctor answered, "I would say it is one accident and the other and there were two factors there one acting right close to the other and they both were a summational effect."

On cross-examination, Dr. Moore was further questioned concerning the two collisions as follows:

"Q. Well, if Mr. Barlow himself felt that his injuries and that his complaints were due to the second accident rather than the first . . . that he was hurt in the second accident and not from the first, under those circumstances would you say that his psychosis resulted from the second accident rather than from the first? A. I couldn't—I would say that most likely it did, it being a more perpetrating factor, yes sir."

Further cross-examination was as follows:

"Q. Doctor, do I understand your conclusion based upon reasonable medical certainty in this case however was that whatever psychiatric problem you found resulted from both accidents? A. I would say it did from both accidents. One acting as a stimulus and the other an aggravating—a superimposed trauma to it. Q. In other words, Doctor, had the first accident not occurred isn't it true that it is quite likely

that no psychological problems that you found would have resulted in the second accident? A. I can't answer that question. Q. You can't differentiate between the two? A. No, sir, I cannot."

Plaintiffs' case was submitted on rear-end collision and following too closely as to Thornhill and on rear-end collision as to Pierce by separate instructions against each defendant and each instruction required a finding that the negligence of the particular defendant caused one of the collisions and combined with the acts of the other defendant to cause injury to plaintiff Billy Barlow.

Each defendant submitted and the court gave instructions conversing both negligence and damage. Defendant Pierce also submitted and the court gave a contributory negligence instruction authorizing a verdict for Pierce if the jury found plaintiff Billy Barlow contributorily negligent in getting back into the Lewis car when it was partially onto the traveled roadway.

The jury returned its verdict in favor of plaintiff Billy Barlow and against defendants Thornhill and Pierce and assessed damages at $63,000 and in favor of defendant Lewis. No appeals have been taken from the verdict and judgment in favor of Lewis. The jury found in favor of all defendants and against plaintiff Laverne Barlow on her loss of consortium claim.

The trial court sustained Thornhill's motion for judgment in accordance with Thornhill's motion for directed verdict on the ground that the evidence failed to prove that negligence on the part of Thornhill directly caused or directly contributed to cause injury or damage to plaintiff Billy Barlow. Defendant Pierce's motion for new trial was sustained on the ground that it was error to give instructions 14 and 15 (damage instructions) as against Pierce "for the reason that said Instructions permitted recovery by plaintiffs for damages sustained as a direct result of 'the occurrence mentioned in the evidence,' whereas, in fact, there were two separate 'occurrences' mentioned in the evidence and one, the

first, involving defendant Lewis and Thornhill was found to be not actionable (by the jury as to defendant Lewis and by the Court, this date, as to defendant Thornhill). The Court concludes that the Jury under Instructions 14 and 15 could have considered both occurrences in arriving at the amount of damages. This is error under the Court's finding of a failure of proof of causation as to the first occurrence. Plaintiff Laverne Barlow's Motion for New Trial is ordered granted as to defendant Pierce on the single ground set forth therein and new trial ordered on issues both of liability and damages in view of order herein granting new trial to defendant Pierce."

With respect to Thornhill, the trial court's ruling setting aside the verdict and entering judgment for Thornhill was, in effect, a ruling that the evidence was not sufficient to show that Thornhill's negligence in causing the first collision was either the or a proximate cause of Mr. Barlow's injuries.

Therefore, the first point to be considered is whether or not the evidence was sufficient to support a jury finding that the collision between the Thornhill and Lewis cars (first collision) was the, or a, cause of injury to plaintiff.

*Brantley v. Couch*, 383 S.W.2d 307 (Mo. App.1964), presented the same issue. In that case plaintiff was a passenger in Thompson's car which struck the rear of one Eftink's car. Shortly thereafter Couch struck the rear of the Thompson car. Brantley sustained a whiplash injury. Plaintiff Brantley testified she felt Thompson's brake go on; looked up and saw Eftink's car less than a car-length ahead; that she leaned forward a little and the impact moved her forward just a little; that the impact was slight; that she couldn't say whether or not her head and neck were snapped by that impact; that the second impact was of terrific force and she was thrown back in the seat and immediately thereafter had quite a bit of pain in her head and was dazed; that she couldn't say in which collision she was hurt; that the collisions happened fast and she couldn't

distinguish between the two. She admitted stating earlier that she did not think the first impact jarred her.

A hypothetical question which outlined the collisions was put to plaintiff-Brantley's doctor who was asked to assume that the first impact was very slight and that anticipating the first impact plaintiff leaned forward and that the first impact produced no snapping of the neck or movement of her body. The doctor was then asked to state with reasonable certainty which of the two impacts would cause the conditions he found. The doctor responded: "Gentlemen of the Jury, I honestly don't believe you could say which one caused it, because, certainly, I have had patients hit from the side, had head-on collisions, and all sustained this injury. Now Mr. Jeans mentioned if she was braced for it and had her neck stiff, and so on, perhaps both, perhaps it was the one behind, but I honestly don't believe in my mind you could say which one caused the damage and did not both impacts cause it." 383 S.W.2d 311-312. The court held at 312: "While the Doctor testified on cross-examination that if an impact from the front was slight and one from the rear was severe he would tend to say the rear end impact caused more damage, he also stated that he had had cases where there had been a light impact and substantial injury. In view of the foregoing testimony we are of the opinion that the evidence was sufficient to submit to the jury the issue of whether plaintiff's single, indivisible injury was the proximate result in whole or in part of the negligence of defendant Thompson, and that the trial court therefore erred in sustaining his motion for judgment."

The ruling in *Brantley* was premised upon the following postulation of the law set forth at 310:

". . . Of course, if all of the evidence established that plaintiff's injury resulted solely from the second impact, between the Thompson and Couch cars, then in order to recover against Thompson it would be necessary for plaintiff to show that Thompson's negligence was the sole, or at least a concurring, cause of the second

collision and plaintiff's consequent injury. *Seeley v. Hutchison*, Mo., 315 S.W.2d 821; *Matthews v. Mound City Cab Co.*, Mo.App., 205 S.W.2d 243; *See v. Kelly*, Mo.App., 363 S.W.2d 213. Or if the two accidents were widely separated as to time and distance, and it was possible to identify with some definiteness the injuries suffered in each, the burden of proving in which accident an injury was sustained would be on the plaintiff. *Sparks v. Ballenger*, Mo., 373 S.W.2d 955.

"[1] But a different rule applies where two or more persons acting independently are guilty of consecutive acts of negligence, closely related in point of time, which cause an indivisible injury; that is, an injury which the triers of fact decide they cannot reasonably apportion among the negligent defendants. According to the weight of authority, in such a case the tort-feasors are jointly and severally liable for all of the damages. The rule is stated in 38 Amer. Jur., Negligence, Sec. 257, pp. 946, 947, as follows:

" ' * * * According to the great weight of authority, where the concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tort-feasor, and the injured person may at his option or election institute suit for the resulting damages against any one or more of such tort-feasors separately, or against any number or all of them jointly. The injured person is not compelled to elect between the tort-feasors in invoking a remedy to obtain compensation. * * * ' "

This court in *Glick v. Ballentine Produce, Incorporated*, 396 S.W.2d 609 (Mo.1965), cited *Brantley* with approval and utilized quotations from *Brantley* as the law on the subject of successive tortfeasors.

The facts in *Brantley* closely approximate the facts in the instant case. The only difference is the time expiring between the two collisions. The first collision in both cases was very light. In *Brantley* plaintiff testified she could not state in which collision she was injured but she did have pain following the second collision. In the instant case Barlow said he was not aware of pain right after the first collision but did have pain following the second collision. In both cases the medical evidence was that it is not unusual for a person in a rear-end collision not to have pain develop until hours later, and in both cases the doctors testified they could not separate the two collisions with respect to injuries and that both collisions caused the injuries.

Defendant Thornhill contends that Barlow's testimony that he was not aware of physical pain after the first collision amounts to a judicial admission of no injury and is conclusive upon him and fatal to Barlow's cause of action, citing *Elliott v. Metropolitan St. Ry. Co.*, 157 Mo.App. 517, 138 S.W. 663, 664 (1911), and *Davis v. Metropolitan St. Ry. Co.*, 177 S.W. 1097, 1098 (Mo.App.1915). The cited cases do not so hold. In *Elliott* and *Davis* the court held that the testimony of a third party as to his observation of injury to the plaintiff was admissible as statements of fact—the observation of a witness and not an inadmissible conclusion.

In the absence of observable injury, lacerations, etc., a person who feels pain, of course, knows because of that sensation that he is injured, but it is not correct to say that just because a person does not immediately feel pain he is, as a matter of law, not injured. That proposition appears to have been accepted in *Brantley* and is supported by the medical evidence in this case.

In the instant case, had there been no second collision and had Mr. Barlow begun having pain in his neck and back the next morning, a not uncommon event, and medical testimony connected the pain and injury

to his neck with the collision, it could hardly be said that plaintiff would have failed to make a submissible case because he did not feel pain at the scene of the collision. But here there was a second collision and it was more severe than the first. By comparing the two collisions, one might have a tendency to say that since the second was more severe the injuries were caused by it rather than the first. However, the doctors testified that both collisions caused the injuries and they could not separate the collisions with respect to the total injuries sustained.

Here the jury was instructed with respect to each defendant and in order to return a verdict as to each defendant had to find that the negligence of the individual defendant caused the collision he was involved in, and combined with the acts of the other defendant caused injury to Mr. Barlow. Additionally, each defendant offered and the court gave an instruction authorizing a verdict for that defendant unless the jury found that the plaintiff sustained injury as a direct result of the individual negligence of the particular defendant.

■ The court holds that plaintiff Billy Barlow made a submissible case against defendants Thornhill and Pierce as to negligence and injury. It was for the jury to say by their verdict whether plaintiff Billy Barlow was or was not injured as a result of the separate negligent acts of each respondent.

Respondent Thornhill argues that because fifteen minutes transpired between the first and second collision the time period takes this case out of the rule enunciated in *Brantley* and *Glick.*

In *Brantley,* the rule set forth at 310 is " . . . if the two accidents were widely separated as to time and distance, and it was possible to identify with some definiteness the injuries suffered in each, the burden of proving in which accident an injury was sustained would be on the plaintiff. *Sparks v. Ballenger,* Mo., 373 S.W.2d 955."

In *Daniels v. Dillinger,* 445 S.W.2d 410, 413 (Mo.App.1969), the court said that when two or more independently acting persons are consecutively negligent in a closely related period of time and cause an injury which the fact trier determines cannot be reasonably apportioned among them, the tortfeasors are jointly and severally liable for all the damages directly and proximately resulting from such negligence. The *Daniels* case involved the question of whether or not the plaintiff was in the car defendant Dillinger struck at the time of that collision. The evidence was conflicting on the point and the court of appeals held that the issue was for the jury to determine and the jury found for defendant Dillinger.

In the instant case, the two collisions occurred at the same place. Thornhill argues this court should hold that the fifteen-minute intervening time span, as a matter of law, precludes the application of the indivisible-injury rule set forth in the *Brantley* and *Glick* cases.

■ There is no arbitrary time limit the court could promulgate as being the "cut-off point" for application of the rule. The gist of the rule with respect to injuries is not so much the time separating the collisions as it is the impossibility of definitely attributing a specific injury to each collision. Each case must be judged in the circumstances of the case. The fifteen-minutes differential in the instant case does not preclude the application of the indivisible-injury rule.

Thornhill contends there can be no recovery against him for the disabling neurosis Mr. Barlow suffers because of the rule in Missouri which precludes recovery for mental distress and suffering unless accompanied by a physical injury. The court has determined that the evidence was sufficient to support a jury finding that Barlow was physically injured in the first collision and, therefore, it need not reach the question presented by this contention nor, in this case, reconsider the continued viability of the minority position Missouri occupies in this regard.[1]

1. See: Annot., 29 A.L.R.3d 1337 (1970); 46 Miss.L.J. 871 (1975); *Psychic Injury and Tort Liability in New York,* 24 St. John's Law Rev. 1 (1949).

Thornhill contends his negligence as to the first collision had come to rest and had become passive and, therefore, was not a proximate cause of the subsequent second collision, citing *Branstetter v. Gerdeman,* 364 Mo. 1230, 274 S.W.2d 240 (1955), and *King v. Ellis,* 359 S.W.2d 685 (Mo.1962).

In *Branstetter* and *King* the question was whether a certain defendant's negligence was the proximate cause of the singular collision in which each plaintiff was injured. In the instant case, plaintiff did not submit his case against defendant Thornhill on the theory that Thornhill's negligence caused or contributed to cause the second collision but rather that Thornhill's negligence caused the first collision and that plaintiff's injuries resulted from that collision and the second collision combined. In these circumstances the cases holding that passive negligence is not a proximate cause of a *collision* and, therefore, the passively-negligent defendant is not liable for injuries resulting from such collision are not apposite.

For the reasons set forth supra, the trial court erred in setting aside the verdict in favor of plaintiff Billy Barlow and entering judgment for defendant-respondent Thornhill. With respect to defendant-respondent Pierce, the trial court sustained Pierce's motion for new trial on the ground that it erred in giving instructions 14 and 15 which are the damage instructions given on behalf of Billy Barlow and Laverne Barlow, respectively. These instructions permitted recovery by plaintiffs for damages sustained as a direct result of "the occurrence mentioned in the evidence." The reason the trial court assigned as the basis for holding it was error to have given these instructions was because there were two separate occurrences mentioned in the evidence and the trial court found the first occurrence (collision) involving Barlow to be not actionable because Mr. Barlow was not injured in the first collision. The court concluded that the damage instructions erroneously authorized the jury to consider both collisions in arriving at the amount of damages.

■ The court has decided supra that there was sufficient evidence to warrant a jury finding that Mr. Barlow was injured in the first collision and that the indivisible-injury rule set forth in *Glick v. Ballentine, supra,* and *Brantley v. Couch, supra,* applies. That means that both respondents were subject to joint and several liability for all of the injuries sustained in the combined events. Therefore, denominating the combined events as an "occurrence" could not have prejudiced either defendant. The point is overruled.

■ Defendant Pierce contends the rear-end-collision doctrine does not apply to him in this case because, first, his car *skidded* into collision with the Lewis car and, second, because the Lewis car was stationary, parked in the median, which "was not a portion of the highway where it should have been." We disagree.

A long line of typical rear-end-collision cases springs from *Jones v. Central States Oil Co.,* 350 Mo. 91, 164 S.W.2d 914 (1942). In *Jones* plaintiff and defendant were traveling in tandem along a highway; negligence was inferable from the fact defendant's truck, in attempting to overtake plaintiff's car, ran into its rear end.

■ The rear-end doctrine is not limited to situations where the facts are the same as those in *Jones.* For example a modified MAI 17.16 instruction was used without challenge in *Scheele v. American Bakeries Company,* 427 S.W.2d 361, 362 (Mo.1968), to submit the issue of a storekeeper's negligence in pushing a hand truck into an oblivious customer standing in his path. Like *res ipsa loquitur* cases, the rear-end doctrine embraces the essential element that "the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care." *McCloskey v. Koplar,* 329 Mo. 527, 46 S.W.2d 557[1] (banc 1932). The rationale of *Jones* was illuminated by quoting from *Thompson v. Keyes-Marshall Bros. Livery Co.,* 214 Mo. 487, 113 S.W. 1128, 1130 (1908): "Driving a team of

horses at a rapid gait into a narrow space where people are standing in plain view of the driver is prima facie evidence of negligence . . . ." The parallel element of prima facie negligence in rear-end-collision cases and in *res ipsa* cases is noted by the Committee's Comment to MAI 17.16: "While there is language in the cases cited below suggesting that the collision itself shows negligence, the safer course is to further hypothesize negligence."

■ A rear-end submission may be justified in automobile collision cases under circumstances warranting an inference of defendant's negligence. As said in *Lichtenberg v. Hug,* 481 S.W.2d 527, 529 (Mo.App. 1972), " . . . the doctrine approaches—if it does not reach—that of *res ipsa loquitur* in that under the circumstances in *Jones* the fact of collision bespeaks the defendant's negligence."

The doctrine applies when a rear-ended plaintiff is parked, *Boresow v. Manzella,* 330 S.W.2d 827, 829, 831 (Mo.1959); is stopped in a line of traffic, *Hollensbe v. Pevely Dairy Co.,* 38 S.W.2d 273[6, 7] (Mo. App.1931); *Glowczwski v. Foster,* 359 S.W.2d 406[1, 2] (Mo.App.1962); or is stationary at a traffic signal, *Watts v. Handley,* 427 S.W.2d 272, 275 (Mo.App.1968). Thus, plaintiff's right to submit the issue of Pierce's liability under the rear-end doctrine is not deniable merely because the Lewis car was stationary rather than mobile, as is the situation in most rear-end-collision cases.

Nor is plaintiff's right to the rear-end submission to be denied on the ground he "was not in a portion of the highway where [he] had a right to be." We do not agree that the Lewis car lacked the right to be in the median strip. Moving the car from the traveled portion of the highway to a safer place was a prudent act. A median strip, like a shoulder, is a part of the highway. See *Ely v. Parsons,* 399 S.W.2d 613[5, 6] (Mo.App.1966). The point is overruled.

Respondent Pierce contends the court erred in excluding from evidence a portion of plaintiff's employment record at McDonnell-Douglas Corp. The parties had stipu-

lated that the record qualified under the Uniform Business Records as Evidence Law, secs. 490.660–490.690, but plaintiff reserved the right to object to specific portions of the records as various parts would be offered. The particular portion Pierce sought to have admitted and to which plaintiff's objection was sustained was a statement made by a Dr. Macon in October 1960 in a letter to the workmen's compensation insurance carrier in connection with a workmen's compensation claim for an injury to plaintiff's left knee. The entry reads, "that this man sustained an injury to his left knee and that his complaints at that time were so multiple and varied that he is most difficult to evaluate and he rambles on and confuses the issue and at times I begin to wonder if he is malingering some."

The court sustained the objection on the ground that the entry was "hearsay and not admissible". Pierce argues the hearsay objection is not applicable as to records qualified under the Business Records Act. Plaintiff argues the court properly excluded the evidence because it was speculative and did not constitute evidence of a definite opinion.

The purpose of the offer was to get before the jury that particular part of the entry where the doctor says, "I begin to wonder if he is malingering" on the basis that this would contradict Dr. Moore's testimony that plaintiff, as to his present complaints, was not dishonest or malingering. It was not the purpose of the offer to show plaintiff had previously injured his left knee but rather to show that Billy Barlow's general moral character, integrity, and credibility were not good.

■ The statement in the letter by the doctor that, "I begin to wonder if he is malingering some" does not qualify as an expert opinion about anything much less constitute an expert opinion that he was malingering. The objection on hearsay grounds may not have been appropriate as to records which were stipulated to as being qualified under the Business Records Act; however, "the admission, exclusion, striking

or refusal to strike evidence is not reversible error where it is proper on any ground, even though not proper on the ground stated in the objection or ruling. In such case it is immaterial on what ground the objection or ruling was made or whether such ground is good; and the sufficiency of the reason need not be considered." *Franklin v. Friedrich,* 470 S.W.2d 474, 476 (Mo.1971); *Eller v. Crowell,* 238 S.W.2d 310, 313 (Mo. 1951). The point is overruled.

Pierce next contends the cumulative effect of certain remarks by plaintiff's witness, Woodrow Lewis, and Dr. Moore was so prejudicial as to constitute reversible error and to require the granting of a new trial to defendant Pierce.

The following occurred during the re-cross-examination of defendant Lewis by the attorney for defendant Thornhill: "Q. Something was said about your having had a lawsuit growing out of this accident for your own injuries. Is that correct? A. Yes. Q. Was that lawsuit filed only against Mr. Pierce? A. I'm pretty sure that Mr. Kimme—he said that was the one that—MR. ALBRECHT: I object to any statement. THE COURT: Sustained. Q. All I want to know is that the only defendant in the lawsuit you filed—Mr. Pierce? A. Yes. He settled out of court, you know. MR. BUCKLEY: Don't go into that. Thank you. MR. ALBRECHT: Step up here."

Defendant Pierce moved for a mistrial and the court overruled that motion and then offered to and did sustain the objection and instructed the jury to disregard the part of the witness's answer pertaining to an out-of-court settlement.

With respect to Dr. Moore's testimony, the record reflects that he was being cross-examined by the attorney for Mr. Pierce concerning malingering generally and the meaning of the word "malingerer" and in the course of the questioning the following appears:

"Q. You find malingerers usually where there is a motive such as material gain or money damage? A. Yes, that is why he is malingering because he has a motive. Q.

So that you would expect to find malingerers then more commonly among your patients who have litigation pending than in patients that have no motive? A. No, I would say the need for a neurosis is more severe there because they are honest people and that they have to have symptoms in order to get what they call justice. I think it is just a play on words upon being just malingering because a person has a neurosis following a trauma. That is just one of the big insurance company's attitudes towards the phrase malingerers. They think they are all malingerers. Q. And none of them are, is that your testimony? A. I didn't say that. No, you know that is a ridiculous statement. Surely there are malingerers, a lot of them. I think anybody would know that."

No objection was made to Dr. Moore's testimony until sometime later and after the doctor was permanently excused as a witness. At that time the attorneys for Thornhill and Pierce both moved for a mistrial which was overruled. The court inquired as to whether there was any request other than for a mistrial to which the attorneys responded in the negative and the trial proceeded.

■ The trial court sustained the objection as to the testimony of Lewis concerning the settlement and instructed the jury to disregard it. In the absence of exceptional circumstances, it is to be assumed the jury obeyed the trial court's direction. *Pender v. Foeste,* 329 S.W.2d 656 (Mo.1959); *Welch v. Thompson,* 357 Mo. 703, 210 S.W.2d 79 (1948). The trial court did not abuse its discretion in refusing to declare a mistrial.

■ As to the testimony of Dr. Moore, there was no timely objection made. The court did not abuse its discretion in refusing to grant a mistrial.

There is no discernible cumulative adverse or prejudicial effect resulting from these two incidents. The point is overruled.

Laverne Barlow filed a motion for new trial as to damages only against Thornhill

and Pierce. The trial court, in accordance with its after-trial ruling as to Thornhill, overruled Laverne's motion as to Thornhill and awarded her a new trial as to Pierce on both negligence and damages. The grounds upon which the court granted Laverne the new trial was that the verdict against her on the loss-of-service claim was inconsistent with the verdict in favor of her husband for substantial damages and because of the undisputed testimony as to her damages.

The trial court did not order a new trial for Laverne as to Thornhill because the trial court decided that the evidence failed to show that Billy was injured in the first collision and, therefore, was not entitled to recover against Thornhill. This court has held supra that Billy Barlow made a submissible case against both defendants Thornhill and Pierce.

On this appeal plaintiff Laverne Barlow contends the trial court erred in failing to award her a new trial as to damages only—that the trial court erred in awarding her a new trial as to both liability and damages.

Defendant Pierce did not appeal from the trial court's order granting Laverne Barlow a new trial as to him on liability and damages.

Laverne Barlow contends she should have been granted a new trial against defendants Thornhill and Pierce as to damages only, relying principally on *Manley v. Horton,* 414 S.W.2d 254 (Mo.1967), and *Foster v. Rosetta,* 443 S.W.2d 183 (Mo.1969).

In *Manley v. Horton, supra,* the husband sustained a substantial injury and received a jury verdict against the tortfeasor. The jury returned a verdict against the wife on her consortium claim. The trial court overruled the wife's motion for new trial. On appeal the court held at 261: "We amended our Rule 66.01 so as to require that such an action [consortium] be joined with the action of the other spouse. . . . As to defendant Horton, the verdict against her [wife] is so inconsistent with the verdict in favor of her husband and against Horton, that it should be set aside and a new trial granted." The court then reversed the

judgment against the wife and ordered a new trial on the issue of damages only.

In *Foster v. Rosetta, supra,* the husband obtained a verdict of $9,000 on his personal injury claim but the jury returned a verdict against his wife on her consortium claim. The trial court granted the husband a new trial on the ground the verdict was inadequate and granted the wife a new trial on the ground that her consequential damages were clearly supported by the uncontradicted testimony of Mrs. Foster and, therefore, the verdict against her in view of the verdict in favor of the husband was inconsistent, contradictory, incorrect and void. On defendant Rosetta's appeal, the court followed *Manley v. Horton, supra,* and affirmed the new trial order, saying at 185: "The court held, [*Manley v. Horton*] 414 S.W.2d l. c. 261[16], that where a verdict is rendered in favor of one spouse in a personal injury action, a verdict against the other spouse in the jointly-tried (as required by Rule 66.01) action for loss of consortium would be set aside because of its inconsistency, and a new trial granted. Accordingly, in this case it would have been reversible error if a new trial had not been awarded on ground 10."

In the instant case, plaintiff Billy Barlow received a verdict of $63,000 and on this appeal no complaint is made about the amount of the verdict. The evidence showed he sustained substantial disabling injuries and the testimony concerning loss of services and consortium was uncontradicted.

The *Manley* and *Foster* cases have been followed and applied in *Kennedy v. Tallent,* 492 S.W.2d 33 (Mo.App.1973), and *Stroud v. Govreau,* 495 S.W.2d 682 (Mo.App.1973). In each instance the loss of services claimant was granted a new trial on damages only where there were no errors affecting the negligence liability portion of the cases.

■■■ Therefore, plaintiff Laverne Barlow should be awarded a new trial as to both defendants Thornhill and Pierce on damages only.

The order of the trial court setting aside the verdict and judgment in favor of plain-

tiff Billy Barlow and against defendants Thornhill and Pierce and granting Pierce a new trial and entering judgment in favor of Thornhill is set aside with directions to reinstate the verdict in the sum of $63,000 in favor of plaintiff Billy Barlow and against Thornhill and Pierce as of the date of the verdict.

The order granting Laverne Barlow a new trial as to defendant Pierce on liability and damages and the judgment entered by the court in favor of Thornhill and against Laverne Barlow are set aside with directions to enter an order granting Laverne Barlow a new trial against defendants Thornhill and Pierce on damages only.

All of the Judges concur.